Carl William JUSTICE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–555–MR.

Supreme Court of Kentucky.

Dec. 17, 1998.

Rehearing Denied March 25, 1999.

David T. Eucker, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Criminal Appellate Division, Office of Attorney General, Frankfort, KY, for Appellee.

JOHNSTONE, Justice.

Appellant, Carl William Justice, was convicted of First–Degree Assault and DUI. He was sentenced to twenty years' (20) imprisonment on the assault charge. He appeals to this Court as a matter right. We affirm.

On September 22, 1996, David Lockhart was severely injured when the car he was driving was struck by a 1975 Plymouth Duster owned by Appellant's wife, Demaris Justice. The main issue at trial was whether Appellant was driving the Duster at the time of the collision.

On the day of the collision, Appellant was paid a surprise visit by two old friends from Cincinnati, Ohio—Johnny Leonard and Danny Luckett. They brought with them a half-gallon of vodka. Appellant, his brother Ellis Hargis, Leonard, and Luckett spent the better part of the day driving around drinking

and smoking marijuana. The foursome returned to Appellant's apartment late in the afternoon. Luckett passed out on Appellant's couch. Appellant testified that he was intoxicated at this point.

Some time later, Appellant, Hargis, and Leonard decided to go to Cincinnati to pick up Leonard's girlfriend. Demaris objected to the plan. A public argument between Appellant and Demaris ensued. Evidently, Appellant won the argument. He got behind the wheel of the Duster, with Leonard and Hargis along for the ride, and sped away from the apartment complex with squealing tires. According to Appellant, he pulled off of the road some one hundred yards away and allowed Leonard to drive the Duster from that point forward. Demaris testified that she saw the car pull over and watched the occupants get out of the car. According to the Commonwealth's proof, the driver switch never occurred.

Appellant's trial lasted one day. He raises a number of issues on appeal. Those with merit are set out below.

### I. *Directed Verdict*

■ Appellant argues that the Commonwealth failed to prove that he was the driver of the Duster at the time of the collision and, thus, was entitled to a directed verdict.

■ "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991). Upon review of the evidence presented by the Commonwealth, it was not clearly unreasonable for the Appellant's jury to find him guilty.

Appellant admitted that he was driving the Duster when he, Leonard, and Hargis left his apartment. He admitted to being intoxicated at the time. Other residents of the apartment complex testified that they saw Appellant speed away in the Duster. The collision between the Duster and Lockhart's vehicle occurred less than a mile away from Appellant's apartment. Witnesses testified that they heard the sirens from emergency vehi-

cles within seven (7) or eight (8) minutes after Appellant sped away from the parking complex. Upon this evidence, it was not unreasonable for the jury to find that Appellant was driving the Duster at the time of the collision.

### II. *Double Jeopardy*

On the night of the collision, a police officer encountered Appellant standing outside a private residence. The officer arrested Appellant and took him to jail. The next day, Appellant pled guilty to Alcohol Intoxication in violation of KRS 222.202 and Leaving the Scene of an Accident in violation of KRS 189.580(1). Appellant argues that "evidence of intoxication is a material fact and is evidence of both the DUI and [First–Degree] Assault elements of the respective charges. Since the District Court ... previously punished [him] for Alcohol Intoxication" his conviction for DUI and First–Degree Assault violates double jeopardy principles. *Defendant's Motion to Dismiss, Record on Appeal* at 26.

The main thrust of Appellant's argument is that our return to the "same elements" test in *Commonwealth v. Burge,* Ky., 947 S.W.2d 805 (1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997), is not controlling in this case because the collision that forms the basis of Appellant's convictions occurred prior to the rendition date of *Burge.* In other words, Appellant argues that *Burge* cannot be applied retrospectively. Thus, Appellant argues that any double jeopardy analysis must be performed under the "same conduct" test that was set forth in *Walden v. Commonwealth,* Ky., 805 S.W.2d 102 (1991), and subsequently overruled in *Burge, supra.*

Appellant relies primarily on *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), in which the United States Supreme Court stated:

The Ex Post Facto Clause is a limitation upon the powers of the legislature and does not of its own force apply to the Judicial Branch of government. But the principle on which the Clause is based— the notion that persons have a right to fair warning of that conduct which will give

rise to criminal penalties—is fundamental to our concept of constitutional liberty. As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment.

*Id.* at 191–92, 97 S.Ct. at 992–93, 51 L.Ed.2d at 265 (internal citations omitted). Appellant's reliance on *Marks* is misplaced. The retrospective application of *Burge* in this case does not infringe upon Appellant's right to "fair warning of that conduct which will give rise to criminal penalties."

In *Marks*, the petitioners were charged with and convicted of transporting obscene materials and conspiring to transport same in violation of federal law. *Id.* at 189, 97 S.Ct. at 991, 51 L.Ed.2d at 263. In the time period between the commission of the acts giving rise to charges against them and their trial, the United States Supreme Court decided *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *Id.* at 190, 97 S.Ct. at 991–92, 51 L.Ed.2d at 263. *Miller* set new standards for isolating "hard core" pornography from the expression protected by the First Amendment. *Id.*, at 190, 97 S.Ct. at 992, 51 L.Ed.2d at 264. The petitioners argued at trial that they were entitled to jury instructions not under *Miller*, but rather under the more favorable obscenity standards set forth under *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). *Id.* Specifically, the petitioners argued "*Miller* ... casts a significantly wider net than *Memoirs*. To apply *Miller* retroactively, and thereby punish conduct innocent under *Memoirs*, violates the Due Process Clause of the Fifth Amendment...." *Id.* The Supreme Court agreed.

The *Marks* Court reversed the petitioners' convictions because "the Due Process Clause precludes the application to petitioners of the standards announced in *Miller v. California*, to the extent those standards may impose criminal liability for conduct not punishable under *Memoirs*." *Id.* at 196, 97 S.Ct. at 995, 51 L.Ed.2d at 268. Thus, the petitioners in *Marks* did not have "fair warning" concern-

ing the legality of their conduct. That is, the unforeseeable judicial enlargement of an essential element of the applicable criminal statutes was retroactively applied to petitioners in a manner precisely like an ex post facto law. *See Bouie v. City of Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 12 L.Ed.2d 894, 899–900 (1964). In the case at bar, Appellant had ample "fair warning" as to the illegality of his conduct.

Appellant was charged and convicted of Alcohol Intoxication in violation of KRS 222.202; Leaving the Scene of an Accident in violation of KRS 189.580(1); Driving Under the Influence of Intoxicants in violation of KRS 189A.010; and First–Degree Assault in violation of KRS 508.010. These statutes were in effect on the date of the collision in question. The elements of the statutes have not been materially changed since the date of the collision. Nor has the judicial construction of any of the applicable statutory elements been enlarged or altered in any way.

The change in the Commonwealth's double jeopardy jurisprudence announced in *Burge, supra*, has not resulted in Appellant being punished for acts which were not criminal when the acts for which he stands convicted were performed. Nor has it resulted in increased punishment for the acts he has committed. *Cf. Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, 38 (1990) (Ex Post Facto Clause prevents government from making illegal any act which was legal when performed, which makes punishment more burdensome for a crime after its commission, or which deprives a defendant of any defense available according to law at the time when the act was committed.) In the case at bar, the change only means that the risk of subsequent prosecution and punishment is greater.

■ Therefore, we hold that retrospective application of *Burge* does not violate due process. *Accord Kurzawa v. Jordan*, 146 F.3d 435 (7th Cir.1998) (retrospective application of *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)[1]

---

**1.** *Dixon* is the federal case upon which *Burge* relied to return to the "same elements" test and to overrule the "same conduct" test of *Walden, supra*, and the "same impulse" test of *Ingram v.*

*Commonwealth*, Ky., 801 S.W.2d 321 (1990). *Burge*, 947 S.W.2d at 811. The *Dixon* Court overruled *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady*

does not violate due process), collecting cases.

Having determined that retrospective application of *Burge* does not violate due process, we further conclude that retrospective application is proper. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court held "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661. The *Griffith* Court gave two important reasons for this holding.

> First, it is a settled principle that this Court adjudicates only "cases" and "controversies." Unlike a legislature, we do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather, the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review....
>
> Second, selective application of new rules violates the principle of treating similarly situated defendants the same.... [T]he problem with not applying new rules is "the *actual inequity* that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary" of a new rule.

*Id.* at 322–23, 107 S.Ct. at 712–13, 93 L.Ed.2d at 658–59 (emphasis in original and internal citations omitted). Both of these reasons favor retrospective application of *Burge*.

First, the proposition that the integrity of judicial review favors retrospective application of *Burge* is inherent in the argument itself. Next, it is just as inequitable to single out a particular defendant from all similarly situated defendants for application of a new rule that works to that defendant's detriment, as it is to single out a particular defendant for application of a rule that works to that defendant's benefit.

■ Finally, the traditional reason for not giving retrospective application to a new rule is not a concern in this case. As explained by the *Griffith* Court, "reliance by law enforcement authorities on the old standards and effect on the administration of justice of a retroactive application of the new rule" virtually compelled a finding that the new rule was not retroactive. *Id.* at 324–25, 107 S.Ct. at 714–15, 93 L.Ed.2d at 659. Double jeopardy concerns come into play only after investigation, interrogation, and arrest. They have little or no bearing on the day-to-day activities of law enforcement personnel. Further, the administration of justice actually benefits from retrospective application of *Burge*. One of the main reasons we returned to the "same elements" test was because "application of the 'same conduct' analysis beyond *Blockburger* has created confusion and is 'unstable in application.'" *Burge*, 947 S.W.2d at 811, quoting *Dixon*, 509 U.S. at 709, 113 S.Ct. at 2863, 125 L.Ed.2d at 576.

■ Thus, we proceed under the test set forth in *Burge*, *supra*, to determine whether Appellant's conviction for Alcohol Intoxication (AI) and Leaving the Scene of an Accident bars his subsequent prosecution for DUI and First–Degree Assault, and whether he can be punished for both DUI and First–Degree Assault in the same proceeding. "Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not.'" *Burge*, 947 S.W.2d at 809, quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

Initially, we note that the *Dixon* Court found that there was no difference, for double jeopardy purposes, between successive prosecutions and multiple prosecutions in the same proceeding. *Dixon*, 509 U.S. at 703–12, 113 S.Ct. at 2859–64, 125 L.Ed.2d at 572–78.

placed an additional, "same conduct" test to determine whether a subsequent prosecution violated the Double Jeopardy Clause. *Dixon*, 509 U.S. at 697, 113 S.Ct. at 2856–57, 125 L.Ed.2d at 568.

Thus, under *Dixon*, the *Blockburger* "same elements" test applies in both situations. While the subject matter of *Burge* involved a multiple prosecution in the same proceeding, the only logical reading of *Burge* is that it is to be applied to successive prosecutions as well. Consequently, we examine both Appellant's successive prosecution and multiple prosecution double jeopardy claims under the "same elements" test.

First, the DUI statute and the AI statute require proof of an additional fact which the other does not. A DUI conviction requires proof that the defendant was "in physical control of a motor vehicle." KRS 189A.010(1). An AI conviction does not. The AI statute requires proof that the defendant "appear[ed] in a *public* place manifestly under the influence of alcohol." KRS 222.202(1) (emphasis added). However, the DUI statute does not require any proof concerning whether the defendant was in a public place. Moreover, the DUI statute has been held to apply to a defendant who operates a motor vehicle on *private* land. *Lynch v. Commonwealth*, Ky., 902 S.W.2d 813, 814 (1995).

Next, the Duty in Case of Accident statute and the First–Degree Assault statute require proof of a fact that the other does not. To be convicted of Leaving the Scene of an Accident requires proof that the defendant failed his duty to "immediately stop and ascertain the extent of injury or damage and render reasonable assistance...." KRS 189.580. The First–Degree Assault statute does not require a defendant to assess damage or aid the injured. The First–Degree Assault statute requires proof that the defendant caused serious physical injury. KRS 508.010(1). The Duty in Case of Accident statute does not require any proof of causation.

Finally, the DUI statute does not preclude a conviction for First–Degree Assault. *See Burge*, 947 S.W.2d at 809 (a defendant can be convicted of both DUI and vehicular homicide under *Blockburger's* "same elements" test). The DUI statute requires proof that the defendant was in physical control of a motor vehicle:

(a) While the alcohol concentration in his blood or breath is 0.10 or more based on the definition of alcohol concentration in KRS 189A.005;

(b) While under the influence of alcohol;

(c) While under the influence of any other substance or combination of substances which impairs one's driving ability;

(d) While under the combined influence of alcohol and any other substance which impairs one's driving ability; or

(e) While the alcohol concentration in his blood or breath is 0.02 or more based on the definition of alcohol concentration in KRS 189A.005 if the person is under the age of twenty-one (21).

KRS 189A.010(1). The First–Degree Assault statute does not require any proof of alcohol or intoxicate consumption. Further, the First–Degree Assault statute requires proof that the defendant caused serious physical injury either intentionally or wantonly. KRS 508.010(1). The DUI statute requires no proof of injury to another or proof of the defendant's state of mind.

## III. *Exclusion of Evidence*

By avowal, Demaris testified that she was interviewed by the police after the collision occurred. After the police left, she found Leonard in her stepson's bedroom. Her avowal testimony was:

[Leonard said that] he thought he had killed Ellis [Hargis] and that he tried to bring [Appellant] with him and he had to leave [Appellant] behind because he was wanted in other states and he [Leonard] was not going to be charged with this accident.

In a bench conference at trial, defense counsel argued that this statement was admissible as a hearsay exception. Specifically, counsel argued that it was a statement against penal interest. The trial court disagreed, stating that the statement did not fit any exception to the hearsay rule, and ruled that the testimony was inadmissible because it was "self serving." The trial court reaffirmed this ruling at the conclusion of Demaris's avowal testimony.

## Statement Against Penal Interest

The statement against penal interest exception to the hearsay rule is located at KRE 804. The exception can apply only if the declarant of the statement is unavailable as a witness. KRE 804(b). Appellant argues that Leonard was unavailable under KRE 804(a)(5), which provides that a declarant is unavailable if he "[i]s absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means." Leonard clearly was not at trial. However, Appellant makes no showing whatsoever that he made any effort to procure Leonard's presence at trial.

In his opening argument, the Commonwealth Attorney stated that the Commonwealth had been unable to subpoena Leonard. However, the record does not contain a subpoena for Leonard to testify for either the Commonwealth *or for the Appellant.* Clearly, the rule put the onus on Appellant to show that he attempted to produce Leonard as a witness. He made no effort to do so at trial, makes no showing of an effort on appeal, and nothing in the record indicates that he made any effort to do so.

On appeal, Appellant makes the patently empty argument that "[s]urely the testimony that Johnny Leonard was aware that he was 'wanted' is sufficient to support a finding of unavailability." The testimony concerning Leonard's cognizance of outstanding warrants against him came from Demaris and, thus, was hearsay. In essence, Appellant's argument is that his duty to produce the declarant or make a reasonable attempt to produce the declarant can be circumvented by simply relying on hearsay, from the same declarant, which gives reason for the declarant's unavailability. The argument is untenable and makes a mockery of the rules of evidence.

## Due Process

█ Appellant also argues that exclusion of Leonard's hearsay statement denied him due process of law. The United States Supreme Court in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), held that, under the specific facts of that case, the exclusion of hearsay in the petitioner's trial denied him due process of law. "In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313.

The petitioner in *Chambers* was convicted of murder in the shooting death of a police officer. *Id.* at 285, 93 S.Ct. at 1040–41, 35 L.Ed.2d at 303. One prong of his defense was that one Gable McDonald shot the police officer. *Id.* at 289, 93 S.Ct. at 1042–43, 35 L.Ed.2d at 305. Between the time the petitioner was arrested and was brought to trial, McDonald made sworn confession that he, not the petitioner, had shot the police officer. *Id.* at 288, 93 S.Ct. at 1042, 35 L.Ed.2d at 304. At a preliminary hearing, McDonald subsequently repudiated the confession and offered an alibi for the murder. *Id.* The local justice of the peace accepted the repudiation and released McDonald from custody. *Id.*

At the petitioner's trial, the state did not call McDonald as a witness, but the petitioner did call him as a witness pursuant to a court order. *Id.* at 291, 93 S.Ct. at 1043–44, 35 L.Ed.2d at 306. McDonald repeated his repudiation of the confession and his alibi defense. *Id.* The petitioner attempted to impeach McDonald with hearsay statements McDonald had made to a number of different people in which McDonald claimed that he had shot the police officer. *Id.* at 292, 93 S.Ct. at 1044, 35 L.Ed .2d at 307. These statements were excluded either as hearsay or because the statements violated the rule that a party may not impeach his own witness, or on both grounds. *Id.* at 294, 93 S.Ct. at 1045, 35 L.Ed .2d at 308. It was the exclusion of these statements that the *Chambers* Court found violated due process.

Assuming arguendo that Leonard's hearsay statement was as critical to Appellant's defense as McDonald's hearsay statements were to the petitioner's defense in *Chambers,* Appellant's argument is still without merit. Unlike *Chambers,* in this case the rules of evidence did not place an impossible bar to the introduction of Leonard's hearsay state-

ment. On the contrary, the requirement of KRE 804(a)(5) that the *proponent* of the introduction of the statement must show that he was unable to produce the declarant through process or other reasonable means is a logical safeguard against self-serving fabrication; i.e., if the declarant's testimony is critical to the defense, then it stands to reason that the defendant would do all he reasonably could to put the declarant before the jury.

Appellant had the constitutional right of compulsory process for producing Leonard to testify on his behalf. U.S. Const. Amend VI; Ky. Const. § 11. For whatever reason, he chose not to avail himself of that right. The consequences of that choice are his to suffer.

### IV. *Victim's Testimony*

 Lockhart, the victim, testified that he had incurred medical expenses in excess of $200,000 in response to a direct question by the Commonwealth, and then added that Appellant had no insurance. The lack of insurance testimony was unsolicited and, upon objection by the defense, the trial court immediately admonished the jury to disregard it and not to consider it for any purpose. However, the trial court ruled that the testimony as to the victim's medical expenses was admissible to prove the seriousness of Lockhart's injuries. Defense counsel approached the bench and moved for a mistrial, which motion was denied by the trial court.

As the trial court ruled, the testimony regarding Appellant's lack of insurance was irrelevant. And as Appellant argues on appeal, such evidence is generally excluded by KRE 411. While the rule is usually invoked in civil trials, nothing in the language of the rule limits its application to civil cases. However, the reason for the adoption of the rule comes from the risk in civil cases of undue prejudice inherent in the evidence. As we stated in *Star Furniture Company v. Holland*, Ky., 273 Ky. 617, 117 S.W.2d 603 (1938):

> [W]e, as well as all courts, have held that the average juror is either unconsciously or otherwise influenced by the fact that the alleged negligent actor carries insurance.

Such average juror, it has been found, is frequently led astray and returns an unauthorized verdict because he concludes that the defendant against whom it is rendered will not be required to pay it out of his individual funds because of indemnity insurance carried by him. Knowing that fact[,] counsel representing injured plaintiffs frequently seek to get before the jury the fact of such indemnity insurance being carried by the defendant in such tort actions, and we, as well as other courts, have never failed to condemn it. In a few cases we declined to reverse the judgment for such practices, but in each instance where we did so there were qualifying facts furnishing a legal excuse for the interjection of the insurance issue complained of. In all other cases we have not hesitated to reverse the judgment containing the error, in the absence of the record showing a legitimate excuse therefor.

*Id.* at 607.

The stakes in a criminal trial are much higher than those in a civil trial no matter how large the prayer for damages. We have no doubt that the average juror appreciates the distinction. Additionally, we note that Lockhart's reference to Appellant's lack of insurance was spontaneous and was not solicited by the prosecutor. The nature of the evidence that Appellant was not insured was not so prejudicial such that sensible, fair-minded jurors could not abide by the trial court's admonition to disregard the evidence. *Ware v. Commonwealth*, Ky., 537 S.W.2d 174, 177 (1976).

 Next, Appellant argues that the evidence of the amount of medical expenses incurred by Lockhart was irrelevant and should have been excluded. The trial court found that the evidence was probative on the issue of the severity of Lockhart's physical injuries and admitted the evidence.

One of the elements of the First–Degree Assault charge that the Commonwealth had to prove was that Appellant caused "serious physical injury." KRS 508.010. The magnitude of Lockhart's medical expenses due to the collision clearly tended to make the fact that Lockhart suffered serious physical inju-

ries more probable and, thus, was relevant evidence. KRE 401. Further, we cannot say that the evidence was so prejudicial that the trial court abused its discretion in admitting this evidence. *Brock v. Commonwealth,* Ky ., 947 S.W.2d 24, 29 (1997) (trial courts are afforded substantial discretion whether to exclude evidence pursuant to KRE 403); *see also United States v. Sanders,* 95 F.3d 449, 453 (6th Cir.1996) (Sixth Circuit Court of Appeals reviews challenges to a trial court's decision to admit or exclude evidence pursuant to FRE 403 under an abuse of discretion standard.) This is especially true given that Appellant never challenged the seriousness of Lockhart's injuries. Rather, Appellant's defense was that he was not the driver of the Duster.

### V. *Separation of Witnesses*

During the trial, defense counsel moved to separate the lead investigator, Detective Martin, and the victim, Lockhart. The trial court denied the motion. Upon what ground defense counsel made the motion is not clear. In any event, the separation of witnesses is controlled by KRE 615, which states:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This rule does not authorize exclusion of:
>
> (1) A party who is a natural person;
>
> (2) An officer or employee of a party which is not a natural person designated as its representative by its attorney; or
>
> (3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

Thus, according to the mandatory language of the rule, the witnesses should have been separated unless one of the three enumerated exceptions applied.

While the Commonwealth, which is not a natural person, did not specifically designate Detective Martin as its representative, had it done so, the detective as lead investigator would have been exempt from separation pursuant to subsection (2). *Humble v. Commonwealth,* Ky.App., 887 S.W.2d 567 (1994).

FRE 615, which is almost identical to KRE 615, has been similarly construed. A number of federal circuits hold that the governmental case agent responsible for a particular investigation should be allowed to remain in the courtroom, even if the agent will later testify on the government's behalf. *See United States v. Gonzalez,* 918 F.2d 1129, 1137–38 (3rd Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991) collecting cases. Thus, Detective Martin was immune from separation; however, Lockhart was not.

Nothing in the record supports a conclusion that Lockhart fits one of the exceptions set forth in KRE 615. Nor does the Commonwealth argue on appeal that one of the exceptions should apply. Therefore, we assume that the trial judge's failure to separate Lockhart was error. Even so, the error was harmless.

The rule was adopted to prevent witnesses who have not yet testified from altering their testimony in light of evidence adduced at trial. *Reams v. Stutler,* Ky., 642 S.W.2d 586 (1982). In the case at bar, Appellant argues that Martin and Lockhart tailored their testimony to contradict the testimony of Appellant's wife, Demaris. However, the motion to separate came *after* Demaris had testified. Thus, the motion came too late to prevent the prejudice alleged on appeal.

Moreover, Appellant's only support for his argument that Lockhart altered his testimony after hearing Demaris testify is that Lockhart's testimony contradicted hers. Appellant offers nothing to show that Lockhart's testimony was false, fabricated, or factually inaccurate or that Lockhart had a motive to alter his testimony. On the contrary, Lockhart's testimony was consistent with the testimony of a rebuttal witness who was subject to separation.

Appellant was not prejudiced due to the trial court's failure to separate Lockhart. The error was harmless. RCr 9.24.

### VI. *Other Allegations of Error*

During his opening statement, the prosecutor stated that the jury would hear testimony that Appellant replied to a neigh-

**316**

bor when asked about the collision that it "wasn't that bad." Defense counsel objected without stating any grounds. The trial court overruled the objection on the grounds that the statement was admissible as Appellant's own statement. Subsequently, during its proof, the Commonwealth put on a witness who testified that Appellant stated that the collision "wasn't that bad." No objection was made to this testimony. On appeal, Appellant argues that the statement should have been excluded on relevancy grounds. The issue is not properly preserved for appeal. *See Ruppee v. Commonwealth*, Ky., 821 S.W.2d 484, 486 (1991); RCr 9.22.

Detective Martin testified briefly as to the extent of the injuries suffered by a passenger in the Duster. Defense counsel objected on relevancy grounds, which objection was overruled by the trial court. The evidence was not probative as to any of the elements of the crimes charged against Appellant and should have been excluded. KRE 402. However, the description was brief and did not conflict with Appellant's defense that he was not the driver of the Duster at the time of the collision. The error was harmless. RCr 9.24.

Finally, Appellant points to numerous instances of alleged "prosecutorial misconduct." None of the complained of acts of misconduct were objected to at trial. Absent contemporaneous objections, "prosecutorial misconduct" is not grounds for reversal, *Davis v. Commonwealth*, Ky., 967 S.W.2d 574, (1998), unless the acts complained of rise to palpable error, which those in this case do not.

For the reasons set forth above, the judgment of the Knox Circuit Court is affirmed.

All concur.