LAMBERT, D., JUDGE:
Jarad McCargo was convicted of multiple charges by a jury after he seriously injured a pedestrian while attempting to parallel park under the influence of alcohol. He brings this appeal from the Fayette Circuit Court judgment, arguing that he was entitled to a directed verdict on the charge of assault in the first degree because there was insufficient evidence to support a finding that he acted under circumstances manifesting extreme indifference to the value of human life as required under Kentucky Revised Statutes (KRS) 508.010(1)(b).
McCargo and his wife, Denise, went out for drinks one evening in Lexington. Denise, who drove her Ford Explorer SUV, described herself as the "designated driver." According to McCargo, he had a mixed cranberry and vodka drink before they left home. The couple went first to the Euclid Avenue area of Lexington, at around 9:00 p.m. There were only a few people there at that time, and a bouncer at the Art Bar, a nightclub, recommended that they return in an hour. The couple went to another bar at the intersection of Newtown Pike and Georgetown Road. Because Denise had difficulty parallel parking the SUV, McCargo parked it for her. The couple ordered margaritas at the bar where they stayed for about forty minutes before driving back to Euclid Avenue.
When they arrived, they looked for street parking near the Art Bar and spotted a parking space in front of another nearby bar, The Beer Trappe. Noel Espino, a captain in the Army National Guard, was standing outside the Beer Trappe, speaking with his wife on his mobile phone. McCargo switched seats with Denise in order to parallel park her vehicle. He tried to back into the parking space, but the SUV was at the wrong angle. He pulled out and backed in again at a sharper angle, then hit the gas pedal rather than the brake. The SUV accelerated in reverse and crushed Espino against the Beer Trappe building. Espino's pelvis was crushed, his femurs were broken and his internal organs were damaged. He had to undergo dialysis because his kidneys had ceased to function. Ultimately, Espino's leg and part of his pelvis had to be amputated. Peter Alvarez and Dutch Inman, two of Espino's *441 friends who were inside the bar, received minor injuries. The Beer Trappe sustained damages in the amount of $26,330 in repairs.
Immediately following the accident, McCargo panicked and drove away. Denise urged him to return, but he kept going. After he turned right off Euclid Avenue, she grabbed the gearshift and stopped the SUV. She jumped out and ran back to the accident scene, and told police what had happened. McCargo meanwhile drove home. When the police arrived there to look for him, they found him hiding behind some garbage cans. McCargo claimed that he was unaware that he had even struck the building.
A few hours after the crash, the police obtained a sample of McCargo's blood, which showed a blood-alcohol level of .122%.
McCargo was tried on the following charges: assault in the first degree, leaving the scene of an accident, criminal mischief in the first degree, two counts of assault in the fourth degree (relating to the injuries suffered by Alvarez and Inman), operating a motor vehicle while under the influence, and failure of owner to maintain required insurance.
McCargo's attorney conceded to the jury that McCargo was guilty of all the charges except assault in the first degree. He argued that having a couple of drinks and then parallel parking was not a circumstance amounting to an extreme indifference to the value of human life. Following his trial, McCargo was convicted of all the charges and sentenced to serve a total of ten years. This appeal followed.
On appeal, McCargo argues that he was entitled to a directed verdict on the charge of assault in the first degree.
A motion for a directed verdict of acquittal should only be made (or granted) when the defendant is entitled to a complete acquittal[,] i.e., when, looking at the evidence *442 as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, under any possible theory, of any of the crimes charged in the indictment or of any lesser included offenses.
Acosta v. Commonwealth 391 S.W.3d 809, 817 (Ky. 2013) (quoting Campbell v. Commonwealth , 564 S.W.2d 528, 530 (Ky. 1978) ).
The Commonwealth contends that McCargo should be arguing that the trial court erred in giving a jury instruction on first-degree assault, not in denying the motion for a directed verdict, because "[t]he type of error alleged here is actually that the instruction under which the jury convicted [the defendant] was improper and unsupported by the proof, which is different from a directed-verdict complaint." Id. at 818. "A motion for directed verdict is not the proper means for relief '[w]hen the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case.' Kimbrough v. Commonwealth, 550 S.W.2d 525, 529 (Ky. 1977) (citing Columbia Gas of Kentucky, Inc. v. Maynard, 532 S.W.2d 3, 7 (Ky. 1976) )." Noakes v. Commonwealth , 354 S.W.3d 116, 119 (Ky. 2011). McCargo objected to the instruction on first-degree assault, but not to the instruction on second-degree assault, a lesser-included offense. Because McCargo did make a specific objection to the first-degree assault instruction, the issue is sufficiently preserved to merit review even though the basis for his appellate argument may not be technically correct.
The standards of review for a directed verdict and the giving of an instruction are as follows:
"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." Commonwealth v. Benham , 816 S.W.2d 186, 187 (Ky. 1991). The evidence presented by the prosecution must be more than a mere scintilla. Id. at 188.
When the question is whether a trial court erred by ... giving an instruction that was not supported by the evidence ... the appropriate standard for appellate review is whether the trial court abused its discretion. Under the familiar standard prescribed in Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999), a trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom. Because such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard
Sargent v. Shaffer , 467 S.W.3d 198, 203 (Ky. 2015), as corrected (Aug. 26, 2015).
"A person is guilty of assault in the first degree when ... [u]nder circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." KRS 508.010(1)(b).
McCargo argues that his conduct did not manifest an extreme indifference to the value of human life. He contends that he was doing an excellent job parallel parking his wife's vehicle until he accidentally hit the accelerator rather than the brake. He distinguishes the facts of his case from those found in Justice v. Commonwealth , 987 S.W.2d 306 (Ky. 1998), a case relied upon by the Commonwealth and the trial court. In Justice , the defendant's conviction for first-degree assault was affirmed on the grounds that he was intoxicated and drove at a high rate of speed, causing an accident. Id. at 309. But speeding is not a necessary element in a finding of the requisite intent in cases involving motor vehicles. In Martin v. Commonwealth , 873 S.W.2d 832 (Ky. App. 1994), for example, the appellant driver, who was intoxicated, approached a narrowing of the road from four lanes to two, dropped his cigarette, and in trying to retrieve it struck a vehicle in the oncoming lane, injuring its occupants. There was no evidence whatsoever of speeding, but the appellate court held that his actions demonstrated the requisite mental state of wantonness for purposes of a finding of guilty of first-degree assault. Martin , 873 S.W.2d at 834.
The General Assembly has made specific provision for voluntary intoxication in its definition of "wantonly":
A person acts wantonly with respect to a result or a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.
KRS 501.020(3) (emphasis supplied).
The evidence showed that McCargo was intoxicated, had taken the wheel from his *443 designated driver, and was attempting to parallel park an SUV on a busy street crowded with pedestrians and patrons sitting at a sidewalk table.
Indeed, evidence was presented that he and his wife had returned to Euclid Avenue precisely because there were not enough patrons there on their first visit earlier in the evening.
Under this set of facts, the trial court did not abuse its discretion in instructing the jury on first-degree assault nor did it err in denying the motion for a directed verdict on that charge. We therefore affirm.
ALL CONCUR.