# Supreme Court of Kentucky

2020-SC-0080-DG

COMMONWEALTH OF KENTUCKY                                          APPELLANT

                          ON REVIEW FROM COURT OF APPEALS
V.                                   NO. 2017-CA-1665
                          KNOX CIRCUIT COURT NO. 15-CR-0112-003

STEVEN D. ROARK                                                    APPELLEE

## ORDER GRANTING PETITION FOR MODIFICATION

The Petition for Modification, filed by the Appellee, of the Opinion of the

Court, rendered December 16, 2021, is GRANTED.

All sitting.  All concur.

ENTERED: FEBRUARY 24, 2022.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

2020-SC-0080-DG

COMMONWEALTH OF KENTUCKY                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
NO. 2017-CA- 1665
KNOX CIRCUIT COURT NO. 15-CR-0112-003

V.

STEVEN D. ROARK                                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING AND REMANDING</u>**

This case comes before the Court on appeal by the Commonwealth, the Appellant, from the opinion of the Court of Appeals which reversed Steven Roark, the Appellee's, conviction and sentence, ordering a new trial. We granted discretionary review as there was a novel question whether the Commonwealth had the same motive and opportunity to cross-examine a person during their guilty plea as it would have if the same person were subsequently a witness at a criminal trial under KRE[1] 804(b)(1). After oral argument and review of the record, however, we conclude the proposed witness' unavailability is a threshold matter dispositive of the case.

---

[1] Kentucky Rules of Evidence.

As a result, we hold the trial court did not abuse its discretion in finding the witness was not unavailable pursuant to KRE 804(a)(5), and reverse the Court of Appeals. We accordingly remand this case to the Court of Appeals for consideration of Roark's additional arguments that were not addressed by the court due to its reversal of his conviction.[2]

## I. Factual and Procedural Background

On February 25, 2015, Roark and Alvin Couch, along with several others, were arrested by Kentucky State Police in Knox County after a search of the trailer (wherein they were present) revealed methamphetamine, equipment for the manufacturing of methamphetamine, and other drug paraphernalia. The Commonwealth indicted all persons on manufacturing methamphetamine, first offense; possession of a controlled substance, first degree; controlled substance endangerment to a child, fourth degree; tampering with physical evidence; and possession of drug paraphernalia. Roark was also indicted as a persistent felony offender, but the charge was dropped prior to his trial.

In early May 2017, Couch entered an open plea of guilty. During the plea colloquy, he made several statements to the effect that he acted alone in manufacturing the methamphetamine. Later that same month, Roark went to trial. His defense was he had no part in manufacturing the methamphetamine. He sought to introduce a certified video record of Couch's plea colloquy as exculpatory evidence in support of this defense. The trial court, however,

---

[2] *Roark v. Commonwealth*, 2017-CA-001665-MR, 2020 WL 594129, at *7 (Ky. App. Feb. 7, 2020) ("Because we are reversing for a new trial, we need not address Roark's arguments that there were three errors regarding his jury instructions.").

refused to admit the video as it believed Couch was available to testify in person.

At the time of Roark's trial, Couch was known by both the Commonwealth and Roark to be located at the Leslie County Detention Center. Both Leslie and Knox counties are in Southeastern Kentucky. Though they do not share a contiguous border, we take notice that the Leslie County Detention Center, located in Hyden, is approximately 51 miles distance by public roadway from the Knox County courthouse, located in Barbourville.[3]

Roark represented to the trial court he had subpoenaed Couch to testify at trial and his investigator had delivered the subpoena to the Leslie County Detention Center. His counsel specifically stated, "My investigator took care of that and I'm pretty sure it was left with the defendant, but I will not—but I don't want to go on record. He told me it was taken care of and I just assumed." There was also some mention of a transport order that had been discussed between the trial judge and defense counsel prior to trial, but Roark concedes no transport order exists in the record. Neither is there a returned subpoena. The trial court found no court order existed compelling Couch's attendance at trial, therefore he did not qualify as an unavailable witness under KRE 804(a)(5).

Roark was convicted of manufacturing methamphetamine, possession of a controlled substance, tampering with physical evidence, and possession of drug paraphernalia. The jury recommended a ten-year sentence on the

---

[3] Courts will take judicial notice of the geography of the state and location of cities therein. *Commonwealth v. Payne*, 245 S.W.2d 581, 582 (Ky. 1952).

manufacturing methamphetamine count, with concurrent sentences of one year each on all other charges totaling ten years' imprisonment. The trial court imposed the recommendation. Roark appealed.

The Court of Appeals reversed his conviction and ordered a new trial. Its decision rested on three points. First, citing *Dickerson v. Commonwealth,* 174 S.W.3d 451 (Ky. 2005), it stated its belief that the refusal to admit the video recording implicated Roark's Due Process right to present a defense. Secondly, it concluded Roark's counsel's representation to the trial court that a subpoena had been delivered was sufficient to demonstrate a good faith effort had been made to procure Couch's presence at trial. The court reasoned since the Commonwealth has a higher burden to demonstrate a witness' unavailability pursuant to the Confrontation Clause, this Court's approval of unavailability determinations based solely upon representations of the Commonwealth must perforce mean an accused defendant's representations also are sufficient to determine unavailability. Additionally, the court believed the trial court's demand for physical proof of a subpoena or transport order was effectively creating a new element under KRE 804(a)(5). Finally, under KRE 804(b)(1), the court ruled the Commonwealth has the same opportunity and motive to cross-examine a defendant during their guilt allocution as it would have if the same person was subsequently a witness in a criminal trial of another person.

We now address the merits of the appeal.

## II. Standard of Review

Determinations of a witness' availability for purposes of KRE 804(a) are reviewed for an abuse of discretion. *Brooks v. Commonwealth*, 114 S.W.3d 818,

4

821 (Ky. 2003). In the civil context, though equally applicable here, we have noted this standard assumes the trial court is "empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). Thus, only a decision which is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" will be reversed. *Id.* at 914.

### III. Analysis

### A. KRE 804(a)(5) and the Good Faith Requirement

Among the several scenarios to determine witness availability, a witness is unavailable if he is "absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance by process or other reasonable means." KRE 804(a)(5). The Court of Appeals premised its ruling below on the belief that Roark had a lesser standard of proof to demonstrate unavailability than the Commonwealth. The court also believed the Commonwealth's heightened burden "has not been proven to be all that onerous as out-of-court testimony has been admitted even without an effort to subpoena the witness or submit proof of true unavailability based on bare assurances from the Commonwealth that a witness is unavailable." This statement was supported by citations to *Lovett v. Commonwealth*, 103 S.W.3d 72, 83-4 (Ky. 2003), and *St. Clair v. Commonwealth*, 140 S.W.3d 510, 539-40 (Ky. 2004).

The Commonwealth does indeed have a constitutional burden of proof to demonstrate a good faith effort pursuant to the Confrontation Clause. *Barber v.*

5

*Page*, 390 U.S. 719, 724-25 (1969). But as Professor Lawson aptly notes, our rule also "intends to require a good faith effort to procure the attendance of the declarant at trial even when he is beyond the court's jurisdiction." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.40[6][f], at 645 (5th ed.). In a word, KRE 804(a)(5) embraces the *Barber* rule. KRE 804(a)(5) makes no distinction between Commonwealth and defendant, speaking only of the "proponent of the statement . . ." Thus, the good faith requirement is equally applicable to all parties, and there is no basis within the rule to find a heightened burden for the Commonwealth.

In *Marshall v. Commonwealth*, we held "[a] trial court cannot merely rely on the Commonwealth's assurances of unavailability in deciding to admit hearsay evidence that is conditioned upon unavailability." 60 S.W.3d 513, 519 (Ky. 2001). Importantly, we cited to the case of *Justice v. Commonwealth*, 987 S.W.2d 306, 313 (Ky. 1998), for that holding. The *Justice* case, however, did not involve the Commonwealth asserting the unavailability of a witness but rather the accused defendant. *Id.* Thus, we have consistently held KRE 804(a)(5) requires the proponent of a witness, whether the Commonwealth or a defendant, to demonstrate a good faith effort to procure the witness by process or other reasonable means. Moreover, we have disapproved of trial courts relying merely on the assurances of a proponent to predicate a finding of unavailability. As we remarked before,

> the requirement of KRE 804(a)(5) that the *proponent* of the introduction of the statement must show that he was unable to produce the declarant through process or other reasonable means is a logical safeguard against self-serving fabrication; i.e., if the declarant's testimony is critical to the defense [or prosecution],

6

> then it stands to reason that the defendant [or prosecutor] would do all he reasonably could to put the declarant before the jury.

*Id.* at 314. The Court of Appeals' understanding of our holdings in *Lovett* and *St. Clair* to the contrary does not withstand scrutiny.

In *Lovett*, the defendant had entered an *Alford* plea and appealed the trial judge's order that an unavailable witness' deposition be taken by video tape in South Dakota with both the defendant and his counsel present. *Lovett,* 103 S.W.3d at 77. Thus, the issue was not whether introduction of witness testimony violated the Confrontation Clause. *Id.* "In fact, because Appellant entered a plea before trial, the trial judge never made a final ruling on the admissibility of the deposition at trial; indeed, the deposition was never taken." *Id.* at 82. *Lovett* then is completely inapposite to the case at bar and its peculiar factual scenario suggests a limited range of application. Moreover, the issue of the Commonwealth's good faith effort was not that the trial court had relied only upon the Commonwealth's mere verbal assurances of unavailability, but the Commonwealth had not followed the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings.[4] We held the Commonwealth had no mandatory duty to resort to that law in order to satisfy the good faith effort requirement. *Id.* at 84. Therefore, we believe the Court of Appeals' reliance on *Lovett* is misplaced. *Lovett* is both factually and legally distinguishable. Additionally, the Court of Appeals' interpretation of *Lovett*'s import is directly contrary to otherwise clear statements of law on point. *Justice,* 987 S.W.2d at 314; *Marshall,* 60 S.W.3d at 519.

---

[4] KRS 421.230 - 421.270.

The reliance upon *St. Clair* is equally misplaced. In fact, Part III(D)(4) of that opinion—addressing the determination whether a witness, Van Zandt, was unavailable—divided this Court in several ways. No position advocated on that issue commanded a majority. The memorandum opinion's discussion in Part III(D)(4), endorsed only by Justice Graves, equivocated on the issue; noting only that a doctor's letter stating Van Zandt could not travel due to pregnancy complications was handed to the defense counsel but not to the trial judge nor ever submitted in the record. *St. Clair*, 140 S.W.3d at 540. After noting "the Commonwealth could have made a much cleaner record . . . [,]" Justice Graves concluded the trial court did not abuse its discretion. *Id.*

Justice Cooper, however, joined by Chief Justice Lambert, concurred only with the result of Part III(D)(4). He preferred to "conclude that the hearsay evidence offered by the prosecutor in this case was sufficient to support the trial court's finding that Van Zandt was unavailable . . ." *Id.* at 574 (Cooper, J., concurring in part and dissenting in part). Nonetheless, Justice Cooper did believe the record demonstrated the defendant and trial judge were handed physical proof of the doctor's letter at a hearing on the issue of Van Zandt's unavailability. *Id.* at 573. Thus, three justices believed physical evidence existed to demonstrate the validity of the Commonwealth's assertions Van Zandt could not travel due to pregnancy complications; therefore, she was properly deemed unavailable under KRE 804(a)(4).

Contrary to that belief, three justices dissented from the conclusion in Part III(D)(4). Justice Keller, joined by Justices Johnstone and Stumbo, cited the Court's decision discussed above in *Marshall v. Commonwealth*, thereby

8

concluding "there is *absolutely nothing* in the record of this case to demonstrate Ms. Van Zandt's unavailability *other than* the Commonwealth's representation that Ms. Van Zandt's pregnancy prevented her from traveling to Kentucky . . ." *Id.* at 576 (Keller, J., concurring in part and dissenting in part). Thus, three justices believed no physical evidence supported the Commonwealth's representations in that case. Justice Wintersheimer did not join any opinion but concurred in result only. *Id.* at 572.

Suffice it to say, *St. Clair* is not binding authority concerning KRE 804(a)(5)'s evidentiary demand to demonstrate good faith. But given our understanding of the good faith requirement contained in KRE 804(a)(5) as explained in *Justice v. Commonwealth* and *Marshall v. Commonwealth*, we now explicitly reject Justice Cooper's partial concurrence in *St. Clair* insofar as it holds the mere representations of a proponent are sufficient to predicate a determination of a witness' unavailability. Justice Keller's partial dissent advocating for the rule as laid down in *Marshall*, 60 S.W.3d at 519, was and is the correct statement of law in the Commonwealth. *St. Clair*, 140 S.W.3d at 576. (Keller, J., concurring in part and dissenting in part).

KRE 804(a)(5) imposes an equal burden on both parties to demonstrate a good faith attempt had been made to procure a witness' presence at trial before the witness will be deemed unavailable. Generally, the trial court may not rely on mere verbal representations of the proponent to determine unavailability. *Marshall*, 60 S.W.3d at 519. Instead, the evidence demanded to prove good faith must be independent of a proponent's mere verbal representations, lest

9

the "self-serving fabrication" intended to be guarded against comes in through the backdoor. *Justice*, 987 S.W.2d at 314.

**B. Roark's Failure to Demonstrate Good Faith Effort per KRE 804(a)(5)**

Having clarified the rule, the Court of Appeals' opinion cannot stand. At trial, the only evidence as to Couch's unavailability offered by Roark was his counsel's statement that his investigator had delivered a subpoena to the Leslie County Detention Center. Significantly, counsel declined to affirm the subpoena had been personally delivered to Couch. Despite this, the subpoena is not the dispositive factor. Because Couch was in the custody of the Commonwealth, a subpoena would have been insufficient to procure his presence at trial.

It is a matter of routine practice that when a witness is in the Commonwealth's custody and his presence is necessary at a hearing or trial, the proponent of the witness will obtain a transport order signed by the trial judge authorizing the witness' release at the designated time and to the designated courthouse, and deliver said transport order to the relevant custodial authority. The record contains no transport order although Roark's attorney did allude to one. But mere verbal representations are not enough to determine the transport order existed. *Justice*, 987 S.W.2d at 314.

Neither the Rule of Civil Procedure nor the Rules of Criminal Procedure speak of transport orders. Nonetheless, given their ubiquity in the day-to-day business of the courts, we hold transport orders fit comfortably within the "other reasonable means" contemplated by KRE 804(a)(5).

10

## C. Roark's Due Process Right was not Harmed by Application of the Rules of Evidence

Finally, we address the Court of Appeals' conclusion that application of the rules of evidence in this case constituted a Due Process violation per the Fourteenth Amendment of the Constitution. We believe that conclusion without merit. While we do not denigrate the holding in *Dickerson v. Commonwealth*, 174 S.W.3d 451 (Ky. 2005), we do not believe it is controlling in this case.

"[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). But we have applied that rule to mean only where the rules of evidence "place an impossible bar" upon the proponent, obstructing his presentation of a defense, will the constitutional considerations overcome evidentiary niceties. *Justice*, 987 S.W.2d at 313. *Dickerson* conforms to that condition.

In *Dickerson*, the trial court refused to admit a transcript, prepared by the proponent, from a video recording of an unavailable witness' prior testimony, which was the sole evidence the defendant could present, because it was not properly authenticated pursuant to CR[5] 30.06(1). *Dickerson*, 174 S.W.3d at 470. We noted, however, that CR 30.06(1) applied to an era prior to the adoption of video recordings as official records for trials. *Id.* In short, by applying CR 30.06(1) the trial court essentially required a non-existent court reporter to authenticate the proponent's transcript which, even had the court reporter existed, he would not have been empowered to do—an impossible bar

---

[5] Kentucky Rules of Civil Procedure.

11

if there ever was one. Instead, the proper rule the trial court should have applied was KRE 901(a). *Id.* at 470. After identifying the correct rule, we then verified the proponent's transcript satisfied the conditions of KRE 901(a). *Id.* at 471. Only after ensuring the transcript conformed to the rules of evidence, did we determine the transcript should be admitted upon retrial if the witness was again unavailable. *Id. Dickerson* therefore does not stand for the proposition that when a defendant's only evidence is hearsay, he is constitutionally absolved from complying with the rules of evidence.

In this case, had Roark simply made copies of the returned subpoena and transport order he alleged existed and presented them to the trial court, the court would have had a proper basis to find Couch unavailable and admit the video recording. This is hardly an impossible bar to meet nor is it a mechanistic application of KRE 804(a)(5). *Dickerson* is inapplicable to his case. Roark's right to present a defense was not harmed by the trial court's refusal to find Couch unavailable.

## IV. Conclusion

KRE 804(a)(5) requires a proponent of a witness demonstrate good faith efforts have been made to procure the witness' presence at trial either by process or other reasonable means before the witness will be declared unavailable. Mere verbal representations of the proponent may not be relied upon by the trial court to predicate a determination of unavailability. Roark did not satisfy this burden as he could not produce a copy of the returned subpoena delivered to Alvin Couch nor a transport order delivered to an authorized authority at the Leslie County Detention Center. Therefore, the trial

12

court did not abuse its discretion in determining Alvin Couch was available for trial. The Court of Appeals is reversed. This case is hereby remanded to the Court of Appeals for consideration of Roark's additional arguments.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General