Tyrone P. MARSHALL, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 1999–SC–0936–MR.

Supreme Court of Kentucky.

Nov. 21, 2001.

Emily Holt, Euva D. Hess, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Kent T. Young, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant, Tyrone P. Marshall, was convicted in the Oldham Circuit Court of murder, criminal attempt to commit murder, and first-degree burglary. He was sentenced to life in prison without the possibility of parole for twenty-five years for the murder conviction and to twenty years each on the attempted murder and first-degree burglary convictions, each to run concurrently with the life sentence. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

At approximately 12:30 a.m. on April 5, 1996, three men in ski masks broke into

the home of Joseph and Sharon Fink in Trimble County, Kentucky. The three would later be identified as Appellant, Mark Downey and Richard Strode. Mr. Fink was watching television when Downey and Appellant entered through the front door and knocked him over in his chair. Strode entered the residence through the back door. When Mrs. Fink emerged from the bedroom, she was taken to the kitchen where her arms were bound behind her back with duct tape. Downey and one of the other men then led Mr. Fink around the house, repeatedly striking him in the head and demanding to know where the jewelry and cash were hidden. Downey did most of the talking and most of the assaulting of Mr. Fink. The Finks were told that, if the perpetrators got what they came for, no one would be hurt.

After ransacking the house and finding the cash and jewelry, the men took Mr. Fink into the kitchen and bound his hands in front of him with duct tape. When Mr. Fink attempted to arise from the kitchen floor, Downey placed a pillow over his head and shot him. Downey then shot Mrs. Fink. Mr. Fink survived; Mrs. Fink did not.

When the men left the house, Mr. Fink went over to his wife and discovered that she was dead. He attempted to telephone for help, but the telephone lines had been cut. Eventually, he went to a neighbor's home and called the police. Mr. Fink was able to identify Mark Downey whom he knew as "Steven Hersner." Prior to April 5, 1996, Downey had befriended Mr. Fink who, at that time, owned a pawn shop in Madison, Indiana. Upon learning that Fink was going out of business, Downey had him followed to find out where he lived and began making plans to burglarize his home. Downey was married to Appellant's ex-wife, Sharon Downey. Though Appellant and Downey were not close

friends, Appellant was having financial difficulties during the months preceding the crime and agreed to participate in the burglary of the Fink residence. During the early morning hours of April 5, 1996, Downey, Strode and Appellant were driven to the Fink residence by Sharon Downey. After the burglary and the shootings, the three men departed in a van stolen from the Finks and proceeded to Richard Strode's house to divide the money. They then drove to Cincinnati, Ohio, with their families and friends. Some of the jewelry was given to a "fence," John Cobb, to sell, and the rest was placed in a rented storage unit in Florence, Kentucky, from where it was later recovered.

Appellant, Richard Strode, Mark Downey and Sharon Downey were all indicted by a Trimble County grand jury on April 19, 1996, for murder, attempted murder and first-degree burglary. The Commonwealth served notice that it would seek the death penalty against the three men. Each defendant was granted a separate trial. On Appellant's motion for change of venue, his case was transferred to the Oldham Circuit Court. Mark Downey pled guilty to the charged offenses on January 21, 1998, and was sentenced to prison for life without the possibility of parole for twenty-five years on the murder charge and twenty years each on the burglary and attempted murder charges, each to run concurrently with the life sentence.

Appellant waived his right to a jury trial and was tried by a judge without a jury. Appellant was found guilty of intentional murder, attempted murder, and first-degree burglary and was given the same sentences as Mark Downey.

## I. INTENTIONAL MURDER CONVICTION.

Appellant argues that the trial court erred when it found him guilty of

intentional murder because he did not, himself, pull the trigger and there was no evidence that he intended the death of Sharon Fink. Under the former felony murder doctrine, Appellant could have been convicted of intentional murder based on his intent to participate in the underlying felony. *Tarrence v. Commonwealth*, Ky., 265 S.W.2d 40, 50 (1953), *cert. denied*, 348 U.S. 899, 75 S.Ct. 220, 99 L.Ed. 706 (1954). In effect, the intent to participate in the felony was transferred to the homicide "so as to make the latter offense a killing with malice regardless of the evidence." *Id.* at 51. With the adoption of the Model Penal Code in Kentucky, however, the felony murder doctrine was abrogated. *Bennett v. Commonwealth*, Ky., 978 S.W.2d 322, 327 (1998); *Kruse v. Commonwealth*, Ky., 704 S.W.2d 192, 193 (1985). Nevertheless, under Kentucky's complicity statute, a defendant can be held liable for the actions of another under two circumstances. Under KRS 502.020(2), "complicity to the result," a defendant is criminally liable when he acts with the same degree of culpability with respect to the *result* that would be sufficient for the commission of the offense. *Tharp v. Commonwealth*, Ky., 40 S.W.3d 356, 361 (2000), *cert. denied*, —— U.S. ——, 122 S.Ct. 289, —— L.Ed.2d —— (2001). Under KRS 502.020(1), "complicity to the act," criminal liability requires that the defendant intended that the victim be killed. *Harper v. Commonwealth*, Ky., 43 S.W.3d 261, 266 (2001). Thus, even if the defendant, himself, did not pull the trigger, he may still be convicted of intentional murder if he was an accomplice to an offense and intended that the victim would be killed during the course of the commission of that offense. *Harper, supra*, at 266; *Tharp, supra*, at 361. Even absent proof of an agreement to kill anyone who gets in the way of the commission of the felony, *see Kruse, supra*, at 194, intent may be inferred from the actions of a defendant or from the circumstances surrounding those actions. *Harper, supra*, at 265; *Talbott v. Commonwealth*, Ky., 968 S.W.2d 76, 86 (1998); *Tungate v. Commonwealth*, Ky., 901 S.W.2d 41, 42 (1995). Intent may also be inferred from knowledge. *Davis v. Commonwealth*, Ky., 967 S.W.2d 574, 581 (1998). However, although intent that a victim be killed may be inferred from conduct or knowledge, such intent may not be predicated on the mere intent to participate in the underlying felony. *Kruse, supra*, at 194. And a defendant's liability for the acts of a coconspirator must be determined by the defendant's own mental state, not that of the coconspirator. *Id.*

Based on the execution-style shootings of the victims, there is no doubt that Mark Downey intended to kill both Sharon and Joseph Fink. Appellant's intent that the Finks be killed is less obvious, but the fact-finder has wide latitude in inferring intent from evidence of the defendant's conduct and knowledge, and/or the surrounding circumstances. *Davis, supra*, at 581; *Tungate, supra*, at 42. The key evidence concerning Appellant's intent that the Finks be killed came from Richard Strode's girlfriend, Kim Long.

After the burglary, Long conversed with all three perpetrators about the events that occurred earlier that morning. During that conversation, Mark Downey told Long that, prior to the shootings, Appellant told him he did not want to be there when the couple was shot and that he did not want to see it. This testimony indicates that Appellant was more than just a surprised bystander to the murder. He knew Downey intended to shoot the Finks and acquiesced. Kim Long also testified to an admission made by Appellant that he physically assaulted Mr. Fink by kicking him and knocking him over in his chair. The trial judge could reasonably infer from

Appellant's own actions and statements that he knew and intended that the Finks would be killed during the course of the burglary. Thus, there was sufficient evidence to convict him of intentional murder under KRS 502.020(1). The hearsay aspects of Long's testimony will be discussed *infra*.

## II. ADMISSION OF HEARSAY EVIDENCE.

### A. *Statements of Richard Strode.*

■ At trial, the Commonwealth introduced statements of Richard Strode through his father, Wilbur Strode. Specifically, Wilbur Strode testified that his son told him that he did not shoot anybody and that he was armed with a can of pepper spray, not a gun. The defense objection on hearsay grounds was overruled. In support of the admissibility of this statement, the Commonwealth argued that the statement was a statement against penal interest by a codefendant. KRE 804(b)(3). The trial court agreed and further held that Richard Strode was unavailable as a witness because he could have asserted his Fifth Amendment privilege against self-incrimination if called to the stand.

■ In order for the hearsay exception for statements against penal interest to apply, the proponent of the statement must show that the declarant is unavailable. KRE 804(b); *Justice v. Commonwealth*, Ky., 987 S.W.2d 306, 313 (1998). A declarant is unavailable if he is exempted from testifying by a ruling of the court on grounds of a privilege. KRE 804(a)(1); *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1990), *cert. denied*, 502 U.S. 1100, 112 S.Ct. 1185, 117 L.Ed.2d 428 (1992). In *Taylor*, the declarant was called to the stand at trial and asserted his own Fifth Amendment privilege before being declared unavailable. *Id.* Here, the Commonwealth made no attempt to call Richard Strode to the stand but only asserted that Strode *could* claim the privilege if called. Based on that assertion, the trial court declared Strode unavailable and allowed Wilbur Strode to testify to his out-of-court statements.

■ In order to satisfy the requirements of the Confrontation Clause, the prosecution must at least make a good faith effort to obtain the declarant's presence at trial. *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968); *Justice v. Commonwealth, supra*, at 313. The Commonwealth made no such effort here. Richard Strode was never subpoenaed by either party and never asserted any claim of privilege. The trial court merely assumed that Strode would assert his Fifth Amendment privilege against self-incrimination if called to the stand. A trial court cannot merely rely on the Commonwealth's assurances of unavailability in deciding to admit hearsay evidence that is conditioned upon unavailability. *Justice, supra*, at 313. Before a declarant may be excused as unavailable based on a claim of privilege, the declarant must appear at trial, assert the privilege, and have that assertion approved by the trial judge. *United States v. Udey*, 748 F.2d 1231 (8th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); *Crawley v. Commonwealth*, Ky., 568 S.W.2d 927 (1978), *cert. denied*, 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979); Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 8.45, at 430–431 (3rd ed. Michie 1993).

■ Thus, it was error to admit Richard Strode's statements through the testimony of his father. However, because the trial court found that Mark Downey carried the only weapon and that Mark Downey, not Richard Strode or Appellant, killed Mrs. Fink, Strode's statements that

he did not shoot anyone and did not carry a gun were not prejudicial to Appellant. If there is no reasonable possibility that, absent the error, the verdict would have been different, the error, as here, is harmless. *Hodge v. Commonwealth*, Ky., 17 S.W.3d 824, 828 (2000), *cert. denied*, 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 498 (2000).

### B. Statements of Mark Downey.

Appellant asserts that out-of-court statements by Mark Downey, testified to by Sharon Downey and Kim Long, should have been excluded because the statements were not made in furtherance of the conspiracy. Statements made by a coconspirator after the goal of the conspiracy has been accomplished are not in furtherance of the conspiracy and, thus, are not competent against any other party. *Napier v. Commonwealth*, Ky., 515 S.W.2d 615, 616 (1974); *Thacker v. Commonwealth*, 219 Ky. 789, 294 S.W. 491, 492 (1927).

Sharon Downey was, herself, a coconspirator, and she testified to statements Mark Downey made to her before and after the commission of the burglary. The defense objection to this testimony was overruled on the basis of the coconspirator exception to the hearsay rule. KRE 801A(b)(5). In order to fall within this exception, the proponent of the statement must show (1) there was a conspiracy; (2) the defendant was a part of that conspiracy; and (3) the statement was made in furtherance of the conspiracy. *United States v. Clark*, 18 F.3d 1337, 1341 (6th Cir.1994), *cert. denied*, 513 U.S. 852, 115 S.Ct. 152, 130 L.Ed.2d 91 (1994).

There is no doubt that there was a conspiracy to burglarize the Fink residence and that Appellant and both Downeys were engaged in that conspiracy. Prior to the commission of the burglary, Mark Downey relayed his plans to Sharon, including the fact that Appellant would be a participant in the burglary. He also told her of an aborted first attempt to burglarize the home and obtained her agreement to drive Appellant, Richard Strode, and himself to the Fink residence in furtherance of the burglary. Thus, Sharon Downey was a coconspirator, and any statements concerning the conspiracy made to her by Mark Downey prior to the completion of the offense were admissible under KRE 801A(b)(5).

Much of Sharon's testimony as to events that occurred after the completion of the burglary came from personal observation. For example, she testified that she and the other three conspirators, along with some other people, stayed in Cincinnati, Ohio, for several days and that Appellant was with them during much of that time. Her testimony as to what she observed during that time was competent testimony, not hearsay. KRE 602; *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999), *cert. denied*, 529 U.S. 1083, 120 S.Ct. 1712, 146 L.Ed.2d 513 (2000). She also testified to statements Mark Downey made in the halls of the hotel in Cincinnati, particularly his declaration of "I killed the motherf—er." Any such statements Mark made to Sharon after the objectives of the conspiracy were accomplished were not made "during the course and in furtherance of the conspiracy." *Napier, supra*, at 616; *Thacker, supra*, 294 S.W. at 492. However, Downey's statement implicated only himself, not Appellant. Therefore, the admission of this statement at Appellant's trial was only harmless error. RCr 9.24.

Defense counsel also objected to the testimony of Kim Long, Richard Strode's girlfriend. Long testified to events and conversations that took place at Strode's residence after the crimes were commit-

ted. Much of her testimony was based upon personal observation. For example, she saw the perpetrators burn their clothing and divide the money. Since this testimony was based on personal knowledge, not hearsay, it was admissible. KRE 602; *Mills, supra.*

■ Long also testified to a conversation she had with Mark Downey, Richard Strode and Appellant after the burglary. During that conversation, Appellant admitted kicking Mr. Fink and knocking him out of his chair. He also admitted that he became upset when Mr. Fink kept looking at him. These statements made by Appellant, himself, were admissible as admissions under KRE 801A(b)(1). Long also testified that all three men discussed the details of the burglary and that Mark Downey did most of the talking. Declarations that are simply narratives of what has already occurred are not made in furtherance of the conspiracy. *Powers v. Commonwealth,* 110 Ky. 386, 61 S.W. 735, 739 (1901); Lawson, *supra,* § 8.30, at 404–05. Although much of what Downey said to Long served only to corroborate other evidence and was, thus, merely cumulative, one statement made by Downey was particularly damaging to Appellant's case.

■ During the course of the above conversation, Mark Downey related to Long that prior to the shooting of the Finks, Appellant told him that he did not want to be there when the victims were shot. As noted, *supra,* the significance of this statement is that it indicates knowledge from which an intent can be inferred that the Finks would be killed during the course of the burglary. Appellant's statement to Downey arguably was not hearsay because it was not offered to prove the truth of the assertion, *i.e.,* that Appellant did not want to be present when the Finks were killed, but only to prove that the statement was made, from which it could

be inferred that Appellant intended that the Finks would be killed. *See* Lawson, *supra,* § 8.05, at 364–65, discussing the admission of nonhearsay statements tending to prove the state of mind of the declarant. But even if Appellant's statement to Downey had been, *e.g.,* "I want you to kill the victims," such would have been admissible as an admission under KRE 801A(b)(1) (party's own statement), KRE 801A(b)(5) (statement of coconspirator), or KRE 803(3) (hearsay exception for statements as to the declarant's then existing state of mind). The real issue here is whether the second layer of hearsay, *i.e.,* Downey's statement to Long, was also admissible under an exception to the hearsay rule so as to satisfy the requirements of KRE 805.

■ When incriminating statements are made in the presence of an accused under circumstances that would normally call for his denial of the statements, and it is clear that the accused understood the statements, yet did not contradict them, the statements are admissible as tacit, or adoptive, admissions. KRE 801A(b)(2); *Hodge v. Commonwealth, supra; Smith v. Commonwealth,* Ky., 366 S.W.2d 902, 905 (1962); *Griffith v. Commonwealth,* 250 Ky. 506, 63 S.W.2d 594, 596 (1933), *overruled on other grounds, Colbert v. Commonwealth,* Ky., 306 S.W.2d 825 (1957). Downey's statement was made in Appellant's presence and implicated Appellant as an accomplice to murder. If the statement was incorrect, Appellant could have corrected it. Yet, he remained silent, and, thereby, acquiesced in the statement. Thus, Downey's statement to Long was admissible against Appellant under KRE 801A(b)(2).

## III. WAIVER OF TRIAL BY JURY.

■ Appellant asserts that he did not validly waive his right to a jury trial be-

cause the trial court did not colloquy with him concerning the voluntariness and ramifications of that waiver. Appellant first tendered his written waiver to the trial court on March 4, 1999. On that occasion, defense counsel advised the trial court that he and Appellant had discussed Appellant's choices at length and that Appellant understood his rights. The Commonwealth did not object to the waiver. The court then went on to decide other matters, and the waiver issue was not raised again until May 6, 1999. On that occasion, defense counsel resubmitted the written waiver without objection by the Commonwealth. The trial court reviewed RCr 9.26(1), which only requires that a jury trial waiver must be in writing, agreed to by the Commonwealth and accepted by the court, and accepted the written waiver without questioning Appellant.

In *Short v. Commonwealth*, Ky., 519 S.W.2d 828 (1975), our predecessor Court first acknowledged the right of a defendant charged with a felony to waive his right to a jury trial, *id.* at 832, and went on to say that "[i]n determining whether a waiver of a jury trial is made understandingly, intelligently, competently, and voluntarily, the court must apply the same standards that are required on the acceptance of a guilty plea." *Id.* at 833. No written waiver had been tendered in that case. In 1981, this Court promulgated RCr 9.26, which states that an accused may waive his right to a "jury trial in writing with the approval of the court and the consent of the Commonwealth." RCr 9.26(1). The rule does not require a separate colloquy with the defendant with respect to voluntariness. It is now well settled that an accused, in the exercise of a voluntary and intelligent choice, may waive his right to a jury trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Adams v. United States, ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Commonwealth v. Johnson*, Ky., 910 S.W.2d 229 (1995); *Short v. Commonwealth, supra*, at 832. The issue here is whether a written waiver suffices, or whether the trial court must also question the defendant to ensure that the waiver is made intelligently and voluntarily even if in writing. The United States Supreme Court has held that a trial court may not presume a waiver of the right to a jury trial from a silent record, *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and that a court should not presume acquiescence in the loss of a constitutional right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Appellant claims that, in order to meet these requirements, the trial court must engage in a colloquy with him to ensure that he knows and understands his rights and that he is voluntarily waiving those rights. However, RCr 9.26(1) requires only that the waiver be in writing. Thus, the rule presumes voluntariness from a written waiver and does not require further investigation by the trial court. This comports with the view that the "writing requirement is designed to impress the defendant with the gravity of the right relinquished and provide[s] the best evidence of the defendant's voluntary consent." *United States v. Martin*, 704 F.2d 267, 271 (6th Cir.1983). Nevertheless, in addition to the written waiver, the trial court here had counsel's assurances that he had discussed the issue at length with Appellant and that Appellant understood his rights.

## IV. COMBINED PENALTY PHASE AND FINAL SENTENCING HEARING.

The trial court held a penalty phase of the trial that combined the truth-in-sentencing hearing, KRS 532.055, with

the capital sentencing hearing, KRS 532.025. Appellant's counsel agreed to the combined hearing; thus, Appellant is relegated to a claim of palpable error. RCr 10.26.

We have held that when the death penalty is sought, the capital penalty hearing should be conducted prior to the truth-in-sentencing hearing because evidence of parole eligibility is admissible during a truth-in-sentencing hearing, but not during a capital penalty hearing. *Francis v. Commonwealth*, Ky., 752 S.W.2d 309, 310 (1988); *see also Perdue v. Commonwealth*, Ky., 916 S.W.2d 148, 164 (1995), *cert. denied*, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). (Of course, even during a capital hearing, the jury is made aware of the possibility of parole by the required instruction on the penalty options of life without the possibility of parole and life without the possibility of parole for twenty-five years.) *Perdue, supra*, holds that, if a defendant receives the death penalty, such an error constitutes palpable error even when, as here, the defense did not object. *Id.* However, if the death penalty is not imposed, the error is harmless. *Id; Allgeier v. Commonwealth*, Ky., 915 S.W.2d 745 (1996); *Francis, supra*, at 311.

In *Allgeier, supra*, where parole eligibility evidence had been introduced into the penalty phase by way of stipulated agreement, we held that, by agreeing to the stipulation, the defendant waived his claim of error. *Id.* at 746. Here, there was no jury and the trial judge presumably was aware of parole eligibility guidelines. No doubt, this was the reason Appellant agreed to the combined hearing. There is also no possibility that if the hearing had been held separately the result would have been different; thus no manifest injustice occurred. *Jackson v. Commonwealth*, Ky. App., 717 S.W.2d 511 (1986).

## V. THE CAPITAL SENTENCE.

As previously stated, Appellant was sentenced to life in prison without the possibility of parole for twenty-five years for the murder conviction. This was the same sentence received by Mark Downey, the triggerman. Appellant claims his sentence is unduly disproportionate to the crime charged and to the sentence received by Downey and, thus, constitutes cruel and unusual punishment. He also argues that his capital sentence should be reversed because the trial court failed to state the aggravating circumstance in writing. Both of these issues were unpreserved; thus, they are reviewed only for palpable error. RCr 10.26.

In reviewing a sentence of death, this Court is required by statute to determine whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. KRS 532.075(3)(c). Appellant was not sentenced to death but merely complains that he received the same sentence as a more culpable codefendant. The Eighth Amendment requires only that the trial court focus on the defendant's own culpability for the crime charged, not the culpability of a codefendant. *Enmund v. Florida*, 458 U.S. 782, 798, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

Murder is a capital offense for which a defendant may receive a sentence of life in prison without the possibility of parole for twenty-five years. KRS 507.020(2); KRS 532.030(1). Only when the offense and the punishment are greatly disproportionate will the punishment be considered cruel and unusual. *Workman v. Commonwealth*, Ky., 429 S.W.2d 374, 378 (1968). Despite the fact that Appellant did not pull the trigger, the trial court found that he intended that the Finks would be killed during the course of the

burglary. Generally, if the punishment given is within the maximum prescribed by statute, a reviewing court will not disturb the sentence. *Mills v. Commonwealth,* 305 Ky. 44, 202 S.W.2d 1005 (1947); *Weber v. Commonwealth,* 303 Ky. 56, 196 S.W.2d 465 (1946). The Kentucky penal code sets minimum and maximum limits on the penalties that may be imposed for a capital offense, and Appellant's sentence fell within those parameters. The sentence imposed in this case was neither disproportionate to his conduct nor cruel and unusual.

■ Under KRS 532.025(3), if the judge decides to impose a capital sentence, he/she is required to designate, in writing, the aggravating circumstance which he/she found beyond a reasonable doubt to exist. *Bevins v. Commonwealth,* Ky., 712 S.W.2d 932, 937 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 963, 93 L.Ed.2d 1010 (1987). We have previously held that trial courts should strictly comply with that statute. *Askew v. Commonwealth,* Ky., 768 S.W.2d 51, 55 (1989). In this case, the trial judge did not spell out the aggravating circumstance in his order. However, the order referenced the videotaped record at the exact point at which he orally found the aggravating circumstance to exist beyond a reasonable doubt. The oral findings were incorporated by reference into the written order. The trial court specifically stated on the record that the Commonwealth had sustained its burden of proof beyond a reasonable doubt with respect to the aggravating circumstance of burglary in the first degree. KRS 532.025(2)(a)(2). Although the court did not recite the findings of fact word for word in the written order, there is no possibility that, absent the error, the result would have been different. Thus, no manifest injustice resulted. *Jackson v. Commonwealth, supra.*

## VI. VIDEOTAPE RECORD

Appellant's last argument is that Kentucky's use of videotaped records rather than transcripts denies defendants effective assistance of appellate counsel. We find this argument meritless. While reviewing a videotaped record of a lengthy trial can be cumbersome and time-consuming, *Deemer v. Finger,* 817 S.W.2d 435, 437 (1990), use of the videotape eliminates the possibility of errors in transcription and may, in fact, reveal errors that might be overlooked in a transcribed record. *Id.*

For the foregoing reasons, the judgment of the Oldham Circuit Court is affirmed.

All concur.