RENDERED: NOVEMBER 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1308-MR

JAMES RAMSEY                                                                 APPELLANT

v.

APPEAL FROM FULTON CIRCUIT COURT
HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 22-CR-00077

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE: James David Ramsey appeals from the judgment of conviction and sentence of the Fulton Circuit Court entered on September 14, 2022. After our review, we affirm.

On July 14, 2022, Ramsey was indicted on one count of first-degree trafficking in a controlled substance (methamphetamine) and possession of drug paraphernalia. He was charged as a first-degree persistent felony offender (PFO I). He entered into a plea agreement. In exchange for his unconditional guilty plea to

first-degree trafficking and possession of drug paraphernalia, the Commonwealth offered to dismiss the PFO I count. The Commonwealth agreed to recommend a seven-year sentence for trafficking and a twelve-month sentence for possession of drug paraphernalia. Ramsey accepted the plea offer and pleaded guilty. He appeared in court by Zoom. Ultimately, the PFO I charge was dismissed, and the court sentenced Ramsey in accordance with the Commonwealth's recommendation on September 14, 2022. This appeal followed.

On appeal, Ramsey argues that the conviction and sentence must be vacated because his plea was not entered knowingly, voluntarily, and intelligently. Additionally, he contends that his physical absence from the courtroom invalidated the proceedings.

In the plea agreement, Ramsey expressly waived many constitutional rights -- including his right to appeal. Nevertheless, he appeals, arguing that his plea failed to meet constitutional standards. He claims that it was not entered knowingly because the trial court neglected to ensure that he understood that by pleading guilty, he would give up his right not to incriminate himself and his right to appeal his conviction. Additionally, he complains that the trial court never inquired of defense counsel regarding Ramsey's understanding of the terms and consequences of the agreement.

A waiver of the right to appeal a guilty plea does not extinguish all issues. *See Grigsby v. Commonwealth*, 302 S.W.3d 52 (Ky. 2010). Some questions survive the waiver; *i.e.*, whether the plea was made knowingly and voluntarily and in accordance with the requirements of *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). We address this issue first.

We are persuaded that Ramsey's plea was made knowingly and voluntarily. In his motion to enter the guilty plea, Ramsey acknowledged that he had reviewed the indictment and discussed with his attorney the facts relevant to the charges and any possible defenses. He indicated that he understood that he could plead either guilty or not guilty to the charges. Additionally, the motion provided as follows:

> I further understand the Constitution guarantees to me the following rights:
>
> (a) The right not to testify against myself;
>
> (b) The right to a speedy and public trial by jury at which I would be represented by counsel and the Commonwealth would have to prove my guilt beyond a reasonable doubt;
>
> (c) The right to confront and cross-examine all witnesses called to testify against me;
>
> (d) The right to produce any evidence, including attendance of witnesses, in my favor;
>
> (e) The right to appeal my case to a higher court.

I understand that if I plead "GUILTY," I waive these rights.

In the motion, Ramsey indicated that he understood the nature of the proceedings and the matters contained in the motion. He declared that his attorney had fully explained his constitutional rights to him and that his guilty plea was made "freely, knowingly, intelligently, and voluntarily."

The plea agreement that Ramsey executed also shows that he was informed of and that he understood his constitutional rights. He and his counsel signed the agreement, which provided, in part, as follows:

4. I understand that I may plead "NOT GUILTY" to any charge against me, in which event the Constitution would guarantee me the following rights:

(a) The right not to testify against myself;

(b) The right to a speedy and public trial by jury at which I would be represented by counsel and the Commonwealth would have to prove my guilt beyond a reasonable doubt;

(c) The right to confront and cross-examine all witnesses called to testify against me;

(d) The right to produce any evidence, including attendance of witnesses, in my favor;

(e) The right to appeal my case to a higher court.

I understand that if I plead "GUILTY," I waive these rights.

Again, Ramsey indicated that he understood the charges against him, the possible defenses to them, the penalties he faced, and the fact that the Commonwealth was recommending a sentence in exchange for his plea. Additionally, Ramsey acknowledged in the agreement that "no one, including my attorney, has promised me any other benefit in return for my guilty plea. . . ."

Furthermore, Ramsey's counsel executed a certificate confirming that Ramsey "understands the allegations contained in the indictment." Counsel indicated that he had fully discussed with Ramsey the charges against him and any possible defenses. He said that he believed Ramsey fully understood. Additionally, counsel indicated that he had reviewed the Commonwealth's plea offer with Ramsey -- as well as the motion to enter his guilty plea. Counsel certified that he believed Ramsey understood the documents. Counsel represented to the court that he had "fully explained" Ramsey's constitutional rights to him and that he believed that Ramsey understood them. Finally, Counsel declared that to the best of his knowledge and belief, Ramsey's guilty plea was made freely, knowingly, intelligently, and voluntarily.

The trial court confirmed that Ramsey understood that he was waiving many of his constitutional rights by pleading guilty. Ramsey notes in his brief that the court **did not specifically reiterate** the waiver of the right to appeal or the privilege against self-incrimination. Thus, Ramsey claims that his plea was invalid

because the trial court failed to advise him that he was waiving his right against self-incrimination and his right to appeal. However, *Boykin* "does not require separate enumeration of each right waived." *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975). Where the defendant has a full understanding of what the plea means and its consequences, it is valid. *Grigsby*, *supra*.

Ramsey offers no authority for the proposition that the trial court is required to inform him specifically that he was waiving his right to appeal and his right against self-incrimination. In fact, guilty pleas are routinely upheld even where specific rights are not enumerated by the trial court during the plea hearing. *Id.*

We have reviewed the following factors: the representations that Ramsey made in the plea agreement and the motion to plead guilty; the certification of counsel concerning Ramsey's understanding and decision to plead guilty; and the trial court's inquiry during the plea hearing and its express finding regarding Ramsey's understanding of the proceedings. After our consideration of these elements of the proceeding, we are persuaded that there is no doubt that Ramsey's plea was made knowingly and voluntarily. Ramsey was clearly aware that he was waiving his constitutional rights by entering the plea of guilty and that he would be sentenced to seven-years' imprisonment. In exchange, he knew that the Commonwealth would recommend that sentence and dismiss the PFO I charge.

This knowledge satisfies the requirements of *Boykin*. Consequently, his conviction and sentence cannot be vacated on this basis.

Next, Ramsey argues that his conviction must be vacated because his physical absence from the courtroom at the time of entry of his guilty plea and sentencing rendered the proceedings illegal. He suggests that the trial court's decision to conduct the proceedings remotely rendered them invalid.

Ramsey concedes that this argument was not preserved for our review. Nevertheless, he requests that we consider whether his physical absence from the courtroom constitutes palpable error pursuant to the standard established by our RCr[1] 10.26.

> A palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

*Id.*

We cannot conclude that manifest injustice has been shown. "Manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012) (internal quotation marks omitted). Ramsey cannot show and the record does not reflect how his physical presence during the proceedings rather

---

[1] Kentucky Rules of Criminal Procedure.

than his remote appearance would have resulted in a different outcome. *See Miller v. Commonwealth*, 391 S.W.3d 857 (Ky. 2013); *Marshall v. Commonwealth*, 60 S.W.3d 513, 523 (Ky. 2001). Consequently, Ramsey is not entitled to relief under our palpable-error standard.

We affirm the judgment of conviction and sentence imposed by the Fulton Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky


Christopher Henry
Assistant Attorney General
Frankfort, Kentucky