RENDERED:  OCTOBER 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1691-MR

ANTONIO PEREZ LOPEZ            APPELLANT


ON REMAND FROM THE KENTUCKY SUPREME COURT
(FILE NO. 2019-SC-0717)

           APPEAL FROM KNOX CIRCUIT COURT
v.           HONORABLE GREGORY A. LAY, JUDGE
           ACTION NO. 18-CR-00065


COMMONWEALTH OF KENTUCKY            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

GOODWINE, JUDGE:  This case is before us on remand from the Kentucky

Supreme Court for reconsideration after *Commonwealth v. McCarthy*, 628 S.W.3d

18 (Ky. 2021).

Antonio Perez Lopez ("Lopez") appeals a judgment and sentence of the Knox Circuit Court convicting him of one count of first-degree assault, one count of second-degree assault, leaving the scene of an accident, and driving under the influence of alcohol. Lopez was sentenced to a total of thirteen years of imprisonment. After careful review, we affirm.

## BACKGROUND

On January 20, 2018, Lopez's vehicle crossed the centerline of Route 11 in Knox County and collided with a vehicle driven by Tiffany Cummins ("Tiffany"). Riding with Tiffany was her husband Chad Cummins ("Chad"). Both suffered physical injuries from the accident. A Knox County grand jury indicted Lopez on two counts of first-degree assault, leaving the scene of an accident, and operating a motor vehicle under the influence of intoxicants, third offense. He pled not guilty. Prior to trial, Lopez filed a motion to suppress challenging the admissibility of his refusal to consent to a blood test. The trial court denied the motion.

At trial, Tiffany testified that immediately before the impact, she saw headlights quickly approaching her vehicle. Lopez testified the Cummins's vehicle had its high beams on as it came toward him, which caused him to lose control of his vehicle. He acknowledged drinking two beers before driving that night and stated he was driving fifty-five miles per hour at the time of the accident.

Deputy Andrew Lawson was the first officer on the scene. He testified Lopez left the scene of the accident on foot. When Lopez was brought back to the scene, he refused to perform field sobriety tests. Lopez denied being drunk, instead testifying that he felt drunk because he had been in a wreck. Deputy Lawson testified Lopez was unsteady on his feet. He arrested Lopez and took him to the hospital for a blood test. Deputy Lawson read Lopez the implied consent form and informed him of his right to contact an attorney. Lopez unsuccessfully attempted to contact an attorney and refused to consent to a blood draw. Due to his refusal, his blood was not drawn. Lopez testified, denying that he refused to take the blood test and that he was ever taken to the hospital.

Following testimony and arguments of counsel, the trial court instructed the jury on first-degree assault[1] and second-degree assault[2] for Tiffany's injuries; first-degree assault, second-degree assault, and fourth-degree assault[3] for Chad's injuries; leaving the scene of an accident;[4] and driving under the influence of alcohol ("DUI").[5] The jury found Lopez guilty of one count of first-degree

---

[1] Kentucky Revised Statutes (KRS) 508.010(1)(b) (Class B felony).

[2] KRS 508.020(1)(c) (Class C Felony).

[3] KRS 508.030 (Class A Misdemeanor).

[4] KRS 189.580.

[5] KRS 189A.010.

assault for Tiffany's injuries, one count of second-degree assault for Chad's injuries, leaving the scene of an accident, and DUI, third offense.[6]

The jury recommended thirteen years on one count of first-degree assault, eight years on one count of second-degree assault, five years for leaving the scene of an accident, and twelve months for DUI, third offense, with all counts, except the DUI, to run concurrently. The jury recommended that the twelve-month sentence on the DUI run consecutively for fourteen years. However, the trial court sentenced Lopez to thirteen years, running all counts concurrently. This appeal followed.

## ANALYSIS

### I. EVIDENCE OF LOPEZ'S REFUSAL TO SUBMIT TO A BLOOD TEST WAS IMPROPERLY ADMITTED.

First, Lopez argues the trial court erred in denying his motion to suppress evidence of his refusal to consent to a warrantless blood draw as evidence of his guilt. "Our analysis of trial court rulings on suppression motions involves a two-stage review, using a clear error standard for factual findings and a *de novo* standard for legal conclusions." *Commonwealth v. Brown*, 560 S.W.3d 873, 876 (Ky. App. 2018) (citations omitted).

Below, Lopez urged the trial court to find he had a Fourth Amendment right to refuse to submit to a blood test without a warrant under

---

[6] KRS 189A.010(5)(c).

*Birchfield v. North Dakota*, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). Lopez argued that because the officer needed a warrant to conduct a blood test, his refusal to undergo such an examination is protected under the Fourth Amendment. We agree. In *Birchfield*, the Supreme Court of the United States addressed the constitutionality of North Dakota's implied consent statute which "impose[d] penalties on motorists who refuse[d] to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws." *Id*. at 2166. The Supreme Court held "reasonableness is always the touchstone of Fourth Amendment analysis[.] . . . And applying this standard, we conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id*. at 2186 (citation omitted).

In *McCarthy*, our Supreme Court recently held that under *Birchfield*, a defendant's refusal to submit to a blood test could not be used to enhance his criminal penalty for DUI, and under controlling precedent could not be used as evidence that he was guilty of DUI. *McCarthy*, 628 S.W.3d 18. Accordingly, the trial court erred in admitting evidence of Lopez's refusal to consent. However, the error was harmless for two reasons: (1) there was other evidence of Lopez's intoxication; and (2) the twelve-month sentence imposed on the DUI conviction was run concurrently with the thirteen-year sentence imposed on the felony convictions.

-5-

In both *McCarthy* and the case before us, the defendant was transported to a hospital for a blood test and the defendant refused the test and, then later, filed a motion to exclude the introduction of his refusal to take a warrantless blood test in reliance on *Birchfield*. In *McCarthy*, the trial court prohibited the Commonwealth from using the defendant's refusal as evidence of intoxication or as an aggravating circumstance but did permit the Commonwealth to use the fact of his refusal to explain why there were no test results and prohibited the defendant from asking the officer why he did not obtain a warrant for a blood test. In the case before us, the trial court allowed the Commonwealth to use Lopez's refusal of consent against him as evidence of guilt.

Lopez's constitutional rights were violated by allowing the introduction of evidence that he refused consent where he had an absolute right to refuse a warrantless search and seizure of his blood.[7] Thus, a legal error occurred, and the only remaining question is whether it was harmful.

In *McCarthy*, there was strong evidence that the defendant was not intoxicated where three witnesses testified they had been out with the defendant all evening and did not see him drink any alcohol, the officer testified he stopped the

_____

[7] *Birchfield* has not eliminated the effectiveness of *Commonwealth v. Hager*, 702 S.W.2d 431 (Ky. 1986), and KRS 189A.105(2)(a)1. in other circumstances. Both continue to be good law in allowing a refusal to take a breath or urine test incident to a DUI arrest to be commented upon, because in those circumstances as long as there is probable cause the defendant has no constitutional right to refuse.
.

defendant because he swerved, the defendant told the officer he swerved because he was distracted by talking to his passengers, the video of the stop was far from conclusive in showing intoxication and the defendant's previous trial had ended in a mistrial.

In contrast, here there was overwhelming evidence of guilt to support Lopez's convictions. Deputy Lawson testified about Lopez's admissions at the scene (that he was too drunk to complete the field sobriety tests) and his observations that Lopez smelled of alcohol and was unsteady on his feet. There was also testimony by the Cumminses that Lopez's vehicle crossed the centerline and entered their lane at a high rate of speed before their collision, causing the accident which trapped Tiffany inside her vehicle and critically injured her.

The testimony from Deputy Lawson regarding his request for a consensual blood draw consisted of him testifying about taking Lopez to the hospital for a blood draw, reading him the implied consent form and explaining that Lopez had a right to refuse consent to a blood draw and had a right to contact an attorney before submitting to the blood draw, and Lopez's unsuccessful attempt to contact an attorney.

Lopez, unlike the defendant in *McCarthy*, chose to testify in his own defense. This is important in the consideration as to whether the error was harmless because when a defendant testifies he thereby "cast[s] aside his cloak of

-7-

silence" and opens himself up to the truth-telling function of the adversarial process, making it permissible to use the defendant's pre-arrest silence for impeachment purposes. *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S. Ct. 2124, 2129, 65 L. Ed. 2d 86 (1980). At least some of the evidence regarding Lopez's refusal to consent to the blood test could potentially have been admissible on rebuttal to impeach his testimony.[8] *See Coulthard v. Commonwealth*, 230 S.W.3d 572, 583 (Ky. 2007). Lopez also had the opportunity to explain his actions, which could lessen the impact of the refusal.[9] When considering these factors, the violation of Lopez's constitutional rights was harmless and does not warrant reversal.

## II. THE TRIAL COURT DID NOT PALPABLY ERR IN ADMITTING EVIDENCE AND THE COMMONWEALTH DID NOT ENGAGE IN FLAGRANT MISCONDUCT.

Second, Lopez argues the Commonwealth introduced and repeatedly referenced improper evidence, misrepresented evidence, and made prejudicial references to evidence not in the record. He concedes each of the issues raised are

---

[8] While Lopez would not have any reason to testify that he was not asked to consent to a blood draw and was not taken to the hospital had Deputy Lawson not already testified about the circumstances of his refusal, there were other portions of his testimony that were not prompted by Deputy Lawson's testimony which could have been impeached. For example, Lopez testified that he left the scene of the accident to get help because his cell phone battery was dying, which could have been impeached through Deputy Lawson's testifying that Lopez gave the deputy his cell phone to contact an attorney and that the phone worked properly.

[9] Here, Lopez did not explain his refusal. Instead, he denied he was taken to the hospital and denied he refused to take the blood test. It is noteworthy that Lopez may have decided not to testify at all had his motion to suppress been granted.

unpreserved, except for references to his refusal to submit to a blood draw, and requests review for palpable error under Kentucky Rules of Criminal Procedure (RCr) 10.26. "When we engage in palpable error review, our 'focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process.'" *Tackett v. Commonwealth*, 445 S.W.3d 20, 26 (Ky. 2014) (quoting *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013)). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Baumia*, 402 S.W.3d at 542 (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).

Lopez's argument contains three subparts. First, he argues the Commonwealth introduced improper evidence when it elicited testimony and made comments during closing argument regarding Lopez's attempts to contact an attorney and his refusal to submit to a blood draw and commented on Lopez's post-arrest silence during closing argument. Second, Lopez argues the Commonwealth improperly introduced and commented on his immigration status. Third, Lopez argues the Commonwealth's assertion during closing argument that he was driving faster than fifty-five miles per hour is unsupported by any evidence.

Before addressing Lopez's arguments, we pause to note that Lopez characterizes these issues as prosecutorial misconduct. However, many of them

are evidentiary issues. "[D]espite the trend to classify many unpreserved issues as prosecutorial misconduct, such actually only occurs when a conviction is obtained by the knowing use of false evidence." *Stopher v. Commonwealth*, 57 S.W.3d 787, 806 (Ky. 2001) (citing *Davis v. Commonwealth*, 967 S.W.2d 574, 579 (Ky. 1998)).

Lopez argues the Commonwealth improperly introduced evidence of and commented on privileged conduct as proof of his guilt. First, because we held Lopez's refusal to consent to a warrantless blood draw was admissible as evidence of his guilt, the Commonwealth did not commit prosecutorial misconduct when it made comments about this fact during closing argument. Lopez also argues that introduction of evidence and comments during closing argument regarding invocation of his right to an attorney and statements during closing argument regarding his silence violated his right to due process.

During the Commonwealth's cross-examination, Lopez explained what happened following the accident, testifying that after the collision, he began walking down the road to ask for help. He did not attempt to call anyone because his cellphone was dying. After Lopez's arrest, Deputy Lawson read the implied consent form and gave Lopez an opportunity to call an attorney. Lopez turned his cellphone on and attempted to contact an attorney.

To invoke the right to counsel, a "suspect [must] clearly and unambiguously assert[] his or her right[.]" *Bradley v. Commonwealth*, 327 S.W.3d

512, 516 (Ky. 2010) (citations omitted).  It is unclear whether Lopez's attempt to contact an attorney meets this standard.  Assuming Lopez invoked his right to counsel, we apply a three-prong test to determine whether references to Lopez's attempt to contact an attorney was harmless error.  We weigh "(1) the extent of comments made by the witness, (2) whether an inference of guilt from silence [or right to counsel] was stressed to the jury, and (3) the extent of other evidence suggesting the defendant's guilt." *Baumia*, 402 S.W.3d at 539 (quoting *United States v. Velarde-Gomez*, 269 F.3d 1023, 1034 (9th Cir. 2001)).

First, Deputy Lawson and Lopez were both questioned regarding Lopez's attempt to contact an attorney, but the comments were relatively brief.  Second, the Commonwealth did not use Lopez's attempt to contact an attorney as evidence of his guilt.  The purpose of this line of questioning was to impeach Lopez's testimony that he had to walk to find help because his phone was dying.  The Commonwealth's inference was that Lopez was guilty of leaving the scene of the accident because he could have called for help, not that he was guilty because of his attempt to invoke his right to counsel.  Third, Lopez's argument under this prong only references evidence of his intoxication even though this issue applies to leaving the scene of the accident.  There was clearly other evidence of Lopez's intoxication.  Deputy Lawson testified that Lopez said he was too drunk to perform field sobriety tests.  As to leaving the scene of the accident Lopez does not dispute

-11-

that he walked away from the accident. Whether he walked away to find help or was guilty of the offense would be less clear without this piece of evidence. Considering these three factors, the second weighs heavily in favor of harmless error. This issue is unpreserved, and Lopez did not show that the outcome of his trial would have differed without this evidence.

Next, we address Lopez's argument that the Commonwealth improperly commented on his post-arrest silence during closing argument. Nothing in the record indicates Lopez ever invoked his right to remain silent. During closing argument, the Commonwealth told the jury Lopez never told law enforcement that the victims had their high beams on when the accident occurred or that he consumed two beers that night. Lopez argues it was his constitutional right to remain silent and not provide these statements to law enforcement. The Commonwealth never elicited testimony regarding Lopez's silence as an inference of his guilt. "In his closing remarks, a prosecutor may draw all reasonable inferences from the evidence and propound his explanation of the evidence and why it supports a finding of guilt." *Tamme v. Commonwealth*, 973 S.W.2d 13, 39 (Ky. 1998) (citing *Bills v. Commonwealth*, 851 S.W.2d 466 (Ky. 1993)).

The Commonwealth compared Deputy Lawson's and Lopez's testimony to show the inconsistencies in Lopez's comments to law enforcement immediately after the accident and his testimony at trial. The Commonwealth

never inferred Lopez was guilty because of his silence. Instead it inferred Lopez was an untrustworthy witness, which was a reasonable inference based on the evidence presented.

Second, Lopez argues the Commonwealth improperly introduced evidence of and commented on his immigration status. He asserts the "probative value is substantially outweighed by the danger of undue prejudice" under Kentucky Rules of Evidence (KRE) 403. During *voir dire*, the Commonwealth asked potential jurors whether they would hold Lopez's immigration status against him. (Video Record (VR) 10/2/18 at 10:49:42.) There was no objection, and no potential juror answered affirmatively. Lopez's counsel then told prospective jurors that he was a "citizen of Mexico" and asked if anyone would hold it against him. (*Id.* at 11:01:32.) No juror responded affirmatively. During trial, counsel asked several questions regarding Lopez's understanding of English, including how long he had been in Knox County. (*Id.* at 1:29:12.) During the closing arguments of the penalty phase, counsel argued for leniency by telling the jury Lopez would most likely be deported and, therefore, a lesser sentence was warranted. (*Id.* at 7:03:07-7:05:33.) In response, the Commonwealth argued against the minimum sentence because the fact that he might be deported should not matter. (*Id.* at 7:06:09.) Lopez never raised any objection to such comments, and his brief does not show how exclusion of such comments would have yielded a

different result or that the error was so fundamental that his right to due process was violated. *Baumia*, 402 S.W.3d at 542 (citation omitted). He faced twenty years in prison. The jury recommended a total of thirteen years in prison.

Third, Lopez argues the Commonwealth's assertion during closing argument that he was driving faster than fifty-five miles per hour is unsupported by any evidence. "We will reverse for prosecutorial misconduct only if the misconduct was 'flagrant' or if we find all of the following to be true: (1) the proof of guilt is not overwhelming, (2) a contemporaneous objection was made, and (3) the trial court failed to cure the misconduct with a sufficient admonition." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citing *Mayo v. Commonwealth*, 322 S.W.3d 41, 55 (Ky. 2010)).

Lopez concedes he did not object to this alleged instance of misconduct. Because Lopez did not contemporaneously object to the comments, we must determine whether the Commonwealth's conduct was "flagrant." "We use the following four-factor test to determine whether a prosecutor's improper comments constitute reversible flagrant misconduct: '(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.'" *Dickerson*, 485 S.W.3d at 329 (citations omitted).

-14-

During closing argument, the Commonwealth argued Lopez's vehicle was traveling faster than fifty-five miles per hour and faster than the victims' vehicle. Tiffany was the only witness who testified regarding Lopez's speed. She testified she was driving between forty-five and fifty miles per hour because the road "was scary." (VR 10/2/18 at 1:35:49-1:36:00.) She said Lopez's vehicle was traveling "really fast." (*Id.* at 1:36:55-1:37:00.) The Commonwealth argued, based on her testimony and the crime scene photos, that Lopez must have been traveling faster than the Cumminses because his vehicle pushed theirs off the road.

If this was misconduct, it was not flagrant. First, the comments on Lopez's speed were not misleading. The Commonwealth never commented on Lopez's precise speed and merely argued that the evidence presented indicated Lopez was driving faster than Tiffany. Second, the comments were isolated as the Commonwealth discussed speed for less than a minute during closing argument. Most of the Commonwealth's closing argument regarding the wantonness of Lopez's conduct focused on his intoxication instead of his speed. Third, the Commonwealth deliberately made the comments to the jury. Fourth, there was other evidence that Lopez acted wantonly in injuring Tiffany and Chad because he was driving while intoxicated and crossed the centerline. Furthermore, the Commonwealth may make reasonable inferences from the evidence during closing

-15-

argument. *Tamme*, 973 S.W.2d at 39. Considering each of the four factors, if the Commonwealth engaged in misconduct, it was not flagrant.

**III. LOPEZ WAS NOT DENIED HIS RIGHT TO A UNANIMOUS VERDICT.**

Third, Lopez argues the jury instructions on first-degree assault and second-degree assault did not ensure unanimity because the instructions failed to identify Lopez's wanton conduct. He asserts the instructions should have specified whether Lopez acted wantonly by driving while intoxicated, speeding, or driving on the wrong side of the road. Lopez concedes this argument is unpreserved and requests review for palpable error under RCr 10.26.

The Supreme Court of Kentucky has held that describing specific theories of wanton conduct in jury instructions is unnecessary. *Cox v. Commonwealth*, 553 S.W.3d 808, 812 (Ky. 2018).

> A "combination" instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory. "It is not necessary that a jury, in order to find a verdict should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other . . . ."

*Id.* (footnotes omitted). Here, the trial court instructed the jury on first-degree assault, second-degree assault, and fourth-degree assault. Each of these instructions required a finding that Lopez acted wantonly. The Commonwealth presented evidence to support three theories of wantonness: (1) that Lopez was intoxicated, (2) crossed the centerline of the road, and (3) that his vehicle was traveling faster than the victims' vehicle. As such, because there was evidence to support each of the theories of wantonness, Lopez was not deprived of his right to a unanimous verdict.

## IV. THE JURY INSTRUCTIONS DID NOT CONTAIN A DOUBLE JEOPARDY VIOLATION.

Finally, Lopez argues the instructions for assault and driving under the influence resulted in a double jeopardy violation. He asserts that the instructions allowed the jury to find him guilty of two different crimes for the same act because the assault instruction merely asked the jury to find that the same conduct manifested extreme indifference to the value of human life. Lopez concedes this argument is unpreserved but argues "the constitutional protection against double jeopardy is not waived by failing to object at the trial level." *Little v. Commonwealth*, 422 S.W.3d 238, 248 (Ky. 2013) (citation omitted).

"[T]he DUI statute does not preclude a conviction for First-Degree Assault." *Justice v. Commonwealth*, 987 S.W.2d 306, 312 (Ky. 1998) (citation omitted). Both statutes require elements the other does not. "The DUI statute

-17-

requires proof that the defendant was in physical control of a motor vehicle," while first-degree assault does not. "The First-Degree Assault statute does not require any proof of alcohol or intoxicate consumption," and "requires proof that the defendant caused serious physical injury either intentionally or wantonly. KRS 508.010(1). The DUI statute requires no proof of injury to another or proof of the defendant's state of mind." *Id.* As such, no double jeopardy violation occurred.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Knox Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven Nathan Goens
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky