RENDERED: NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0981-MR

JARAD MCCARGO — APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.    HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 14-CR-01125

COMMONWEALTH OF KENTUCKY — APPELLEE

AND

NO. 2020-CA-1117-MR

JARAD MCCARGO — APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.    HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 14-CR-01125

COMMONWEALTH OF KENTUCKY — APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE:  Jarad McCargo was convicted by a jury of assault in the first degree, leaving the scene of an accident (a misdemeanor), criminal mischief in the first degree, two counts of assault in the fourth degree, operating a motor vehicle while under the influence, and failure to maintain required insurance.  He was sentenced to ten years' imprisonment.

McCargo appealed to this Court, and his convictions were affirmed in a published opinion rendered on September 8, 2017.  From that opinion, we borrow a recitation of the facts of the underlying crimes:

> McCargo and his wife, Denise, went out for drinks one evening in Lexington.  Denise, who drove her Ford Explorer SUV, described herself as the "designated driver."  According to McCargo, he had a mixed cranberry and vodka drink before they left home.  The couple went first to the Euclid Avenue area of Lexington, at around 9:00 p.m.  There were only a few people there at that time, and a bouncer at the Art Bar, a nightclub, recommended that they return in an hour.  The couple went to another bar at the intersection of Newtown Pike and Georgetown Road.  Because Denise had difficulty parallel parking the SUV, McCargo parked it for her.  The couple ordered margaritas at the bar where they stayed for about forty minutes before driving back to Euclid Avenue.

When they arrived, they looked for street parking near the Art Bar and spotted a parking space in front of another nearby bar, The Beer Trappe. Noel Espino, a captain in the Army National Guard, was standing outside the Beer Trappe, speaking with his wife on his mobile phone. McCargo switched seats with Denise in order to parallel park her vehicle. He tried to back into the parking space, but the SUV was at the wrong angle. He pulled out and backed in again at a sharper angle, then hit the gas pedal rather than the brake. The SUV accelerated in reverse and crushed Espino against the Beer Trappe building. Espino's pelvis was crushed, his femurs were broken and his internal organs were damaged. He had to undergo dialysis because his kidneys had ceased to function. Ultimately, Espino's leg and part of his pelvis had to be amputated. Peter Alvarez and Dutch Inman, two of Espino's friends who were inside the bar, received minor injuries. The Beer Trappe sustained damages in the amount of $26,330 in repairs.

Immediately following the accident, McCargo panicked and drove away. Denise urged him to return, but he kept going. After he turned right off Euclid Avenue, she grabbed the gearshift and stopped the SUV. She jumped out and ran back to the accident scene, and told police what had happened. McCargo meanwhile drove home. When the police arrived there to look for him, they found him hiding behind some garbage cans. McCargo claimed that he was unaware that he had even struck the building.

A few hours after the crash, the police obtained a sample of McCargo's blood, which showed a blood-alcohol level of .122%.

*McCargo v. Commonwealth*, 551 S.W.3d 439, 440-41 (Ky. App. 2017).

McCargo sought discretionary review from the Kentucky Supreme Court, which was denied in 2018.[1]

In 2021, McCargo sought relief from his sentence due to the outbreak of the novel coronavirus (COVID-19), filing a *pro se* motion "pursuant to [Kentucky Rules of Civil Procedure] (CR) 60.02, 60.03 and the Eighth and Fourteenth Amendments to the United States Constitution" in the Fayette Circuit Court, which was summarily denied. He subsequently, by and through counsel, filed a motion for relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42 alleging ineffective assistance of both trial and appellate counsel, which was also denied by the Fayette Circuit Court. He has appealed both orders, and the cases have been consolidated.

## STANDARD OF REVIEW

We employ a *de novo* standard of review concerning the trial court's determination of whether it had jurisdiction to consider either of McCargo's motions for relief from his sentence because jurisdiction is a matter of the application of law.

> Because the issue of whether the trial court had
> jurisdiction to grant Settles' motion for shock probation
> is a question of law, we review it *de novo*. *See Hidalgo
> v. Commonwealth*, 290 S.W.3d 56, 58 (Ky. 2009) ("*De
> novo* review is generally the proper standard where the
> lower court is alleged to be acting outside its jurisdiction,

---

[1] *Jarad McCargo v. Commonwealth*, No. 2018-SC-0082-D.

because jurisdiction is generally only a question of law[]"); *Brown v. Commonwealth*, 326 S.W.3d 469, 471 (Ky. App. 2010) ("Whether the trial court acted outside its jurisdiction in amending the judgment of conviction and sentence is a question of law, which we review *de novo*[]").

*Commonwealth v. Settles*, 488 S.W.3d 626, 629 (Ky. App. 2016).

## ANALYSIS

### *Denial of reduction of sentence due to pandemic*

McCargo first argues that the trial court erred by denying his CR 60.02 and CR 60.03 motion to amend his final judgment to reduce his sentence because the coronavirus pandemic converted his sentence into cruel and unusual punishment.

CR 60.02 provides a trial court with the power to grant relief for errors related to the matter which were not previously presented to the trial court. McCargo argues that it is CR 60.02(f)[2] which entitles him to relief, but his request for relief due to the pandemic and his particular susceptibility to its ravages is not related to his conviction and cannot vest jurisdiction to amend his sentence.

In *Wine v. Commonwealth*, the appellant sought a reduction in his sentence because his teenaged son had been adversely affected by his father's

---

[2] "[A]ny other reason of an extraordinary nature justifying relief."

incarceration. This Court, while sympathetic, held that CR 60.02 simply does not

provide for consideration of such reasons:

> The Court in *Gross v. Commonwealth*, Ky., 648 S.W.2d 853, 856 (1983), stated:
>
>> CR 60.02 was enacted as a substitute for the common law writ of *coram nobis*. The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court, or (3) which the party was prevented from so presenting by duress, fear or other sufficient cause.
>
> In *Harris v. Commonwealth*, Ky., 296 S.W.2d 700 (1956), the Court held that CR 60.02 does not extend the scope of the remedy afforded through *coram nobis* nor provides any additional grounds for relief. Thus, the grounds for relief on a motion pursuant to CR 60.02 are essentially those stated in *Gross*, *supra*.
>
> The appellant asserts that the family hardships were unknown to him at the time of his guilty pleas and were not an issue at his sentencing. The appellant admits that whether such hardship amounts to a reason of an extraordinary nature has not been decided in Kentucky, but urges that we adopt that position. We refuse to do so.
>
> In general, the reasons behind CR 60.02 listed in *Gross*, *supra*, and in the rule itself have to do with some significant defect in the trial proceedings or evidence at trial, etc., such that "a substantial miscarriage of justice will result from the effect of the final judgment." *Wilson v. Commonwealth*, Ky., 403 S.W.2d 710, 712 (1966). The hardships cited by the appellant have no relation to

the trial proceedings or any additional undiscovered evidence not presented at trial but only concern the adverse effect the appellant's incarceration is having on his family. In all likelihood, the family of every defendant sentenced to a prison term suffers some degree of adversity from the defendant's incarceration. Although the hardships on the appellant's family may be greater than the average, we simply fail to see how family hardships of any severity are so extraordinary that a "substantial miscarriage of justice" will result and relief under CR 60.02(f) would be justified.

Further, if changes in family or other conditions were viewed as proper grounds for relief under CR 60.02(f), great uncertainty would arise surrounding the finality of judgments.

*Wine v. Commonwealth*, 699 S.W.2d 752, 753-54 (Ky. App. 1985). For the same reasons, we find that CR 60.02 simply is not available to McCargo because of a worldwide pandemic, which is unrelated to his conviction and sentence.

McCargo likewise invokes CR 60.03, but such presupposes an independent action, not alternative grounds. Simply put, a CR 60.03 motion which is accompanied by a motion pursuant to other grounds, such as CR 60.02, is incongruous. CR 60.03 motions are independent actions, not accompanied by any other grounds, because any other grounds do not exist. CR 60.03 clearly prohibits relief when one has been denied CR 60.02 relief, and as both the trial court and this Court have denied McCargo CR 60.02 relief, albeit for disparate reckonings, he is not entitled to relief pursuant to CR 60.03:

> Rule 60.02 shall not limit the power of any court to entertain an independent action to relieve a person from a judgment, order or proceeding on appropriate equitable grounds. Relief shall not be granted in an independent action if the ground of relief sought has been denied in a proceeding by motion under Rule 60.02, or would be barred because not brought in time under the provisions of that rule.

CR 60.03.

McCargo also purports to be requesting relief from his sentence pursuant to the Eighth and Fourteenth Amendments. However, the amendments themselves, of course, provide no procedural mechanism nor act to grant jurisdiction for the trial court to grant the requested relief.

### *Purported RCr 11.42 motion*

Next, McCargo contends he was entitled to relief for ineffective assistance of both trial and appellate counsel under RCr 11.42. The trial court herein rendered a lengthy and well-reasoned opinion denying McCargo's RCr 11.42 motion. However, we need not address the merits of McCargo's motion as he failed to comply with the mandates of the rule which state:

> (2) The motion **shall be signed and verified** by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. **Failure to comply with this section shall warrant a summary dismissal of the motion**.

RCr 11.42(2) (emphasis added). McCargo's RCr 11.42 motion did not comply

with this rule because he failed to sign or verify his motion.

It is true that our Supreme Court softened the severity of subsection

(2) in *Cleaver v. Commonwealth*, 569 S.W.2d 166, 169 (Ky. 1978), holding:

> [t]he procedure for obtaining relief pursuant to the
> provisions of RCr 11.42 must be complied with. The
> motion for relief must be in writing, verified by the
> movant, and state specifically the grounds of challenge
> and the facts in support thereof. . . . It is jurisdictional
> that the terms and provisions of RCr 11.42 must be
> complied with, even though a substantial, and not an
> absolute, compliance is adequate.

Nevertheless, herein, McCargo not only failed to verify his motion but also failed

to sign it. As such, there is no evidence in the record to support a finding that

McCargo even alleges error conferring jurisdiction. Consequently, the failure of

McCargo to sign or verify his RCr 11.42 motion mandates dismissal.

## CONCLUSION

For the foregoing reasons, both orders of the Fayette Circuit Court

denying McCargo's post-conviction motions are AFFIRMED.

THOMPSON, L., JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS IN PART AND FILES
SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING IN PART: While I concur

with the majority in the analysis and conclusion concerning McCargo's CR 60.02

-9-

motion seeking relief from his sentence due to the outbreak of the novel coronavirus and his perceived particular susceptibility to its ravages, I must dissent from the portion of the Opinion concerning the RCr 11.42 motion for ineffective assistance of both trial and appellate counsel. While I do not disagree with the ultimate outcome of the majority in denying McCargo relief, I find that the trial court did not enjoy jurisdiction to even consider the motion for a failure of substantial compliance with the rule.

RCr 11.42 requires verification of the allegations made therein:

> (2) The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion.

The meaning of the last sentence, requiring summary dismissal for failure to comply with the requirements of the section, has been interpreted by the majority to require dismissal, and that as long as the conclusion of the consideration of a non-complying motion is a denial of relief, such dismissal has occurred. I disagree. I find that a "summary dismissal" requires no analysis and should occur because the failure to comply with the dictates of the section ends in a failure to grant jurisdiction to the trial court to even consider the motion.

Whether substantial compliance with the requirements of RCr 11.42 has been met, particularly as verification is considered, the following cases distill the question to whether the movant was represented, in fair measure.

In *Cleaver v. Commonwealth*, 569 S.W.2d 166 (Ky. 1978), cited in the Opinion, the motion was never reduced to writing, so it could not be verified.

> The procedure for obtaining relief pursuant to the *provisions of RCr 11.42 must be complied with*. The motion for relief *must be in writing, verified by the movant, and state specifically the grounds of challenge* and the facts in support thereof. In the instant case, there being no written motion, there could be no compliance with the provisions of RCr 11.42, not even a substantial compliance. *It is jurisdictional that the terms and provisions of RCr 11.42 must be complied with, even though a substantial, and not an absolute, compliance is adequate*. Therefore, even had RCr 11.42 been an appropriate remedy in this instance, *in the absence of an appropriate motion as required by RCr 11.42, the Johnson Circuit Court would not have had the authority to enter an order granting the appellant any relief*.

*Id.* at 169 (emphasis added).

The Kentucky Supreme Court was clear that compliance with the requirements of being reduced to writing and verified are *jurisdictional* considerations. Here, McCargo's motion was filed in the trial court *by counsel*. This is remarkable for two reasons. First, substantial compliance is really more of a matter of grace for those proceeding *pro se*. When counsel is involved, members of the bar are required to comply with the rules. *See Haines v. Kerner*, 404 U.S.

519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) ("We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers[.]").  Second, when a *pro se* litigant files a motion pursuant to RCr 11.42, they sign as the filer, even if they fail to sign verifying the contents.  Such would be "substantial compliance."

Here, however, counsel failed to follow the rule and have the motion verified by his client, and McCargo, not having filed *pro se*, did not sign the pleading so as to substantially comply.  By the very nature of the allegations of an RCr 11.42 motion, the movant is alleging facts not in the record, "my attorney told me X," "the witness lied," *etc*.  The allegations are, by and large, not supported by the record and, therefore, must be "verified" by the movant per the rule.  When a *pro se* movant fails to specifically "verify" the motion, but signs it as the movant, and is the author of the allegations contained therein, there is reason to grant substantial compliance.  However, where, as here, the motion is authored by and filed by counsel, with no signature appearing anywhere by the movant, such simply cannot be countenanced as substantial compliance.

In *Hurt v. Commonwealth*, rendered last year, a panel of this Court specifically held that failure to verify was fatal to granting jurisdiction to the trial court.  In *Hurt*, the *pro se* movant failed to file a motion and did not sign the memorandum he did file.  The Court held that fatal.

-12-

A trial court loses jurisdiction ten (10) days after the entry of a judgment or order. *Bowling v. Commonwealth*, 964 S.W.2d 803, 804 (Ky. 1998). If Hurt had followed the dictates of RCr 11.42 and filed a verified pleading, jurisdiction could have been reinvested in the Perry Circuit Court. However, he failed to do so. No motion pursuant to RCr 11.42 whatsoever filed by him appears in the record as certified. Such failure to file a verified motion could be forgiven, due to his *pro se* status at that time, had he verified the "Memorandum" he filed, also *pro se*. However, the memorandum was likewise unverified. As there was a lack of conformity with RCr 11.42, the Perry Circuit Court did not have jurisdiction to consider the pleading.

*Hurt v. Commonwealth*, No. 2018-CA-001637-MR, 2020 WL 5592606, at *1 (Ky. App. Sep. 18, 2020), *discretionary review denied* (Feb. 9, 2021).

In conclusion, the fact that the movant signed no document – no motion, no memorandum – which contained factual allegations of which he and he alone would have knowledge, the failure to have the motion verified is fatal and jurisdiction was not conferred. Allowing unverified motions would unleash a hornet's nest of spurious allegations against counsel, as there would be no consequences to abject character assassination. The requirement to verify holds with it the threat of a perjury charge. It is important and must be upheld. I therefore dissent in part.

BRIEFS FOR APPELLANT:

2020-CA-0981-MR:
Jarad McCargo, *pro se*
West Liberty, Kentucky

2020-CA-1117-MR:
Reginald Thomas
Lexington, Kentucky

BRIEFS FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky